No. 22562.
No. 22563.

BOBBY W. PETTY, MICHAEL ALLEN SMITH *v.* THE PEOPLE
OF THE STATE OF COLORADO.
(447 P.2d 217)

Decided November 18, 1968.

242

BERT A. GALLEGOS, for plaintiff in error Bobby W. Petty.

GARY H. HEMMINGER, for plaintiff in error Michael Allen Smith.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PAUL D. RUBNER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

PLAINTIFFS in error, hereinafter referred to as defendants or by name, were charged in the information with unlawful possession of cannabis sativa L., commonly known as marijuana, and conspiracy to possess the same. The jury rendered a verdict of guilty against both defendants on each count. At the close of the People's case, defendants moved for a judgment of acquittal on the grounds of insufficiency of the evidence to establish possession of the substance and error on the part of the trial court in failing to suppress certain evidence. This motion was denied and upon renewal at the close of all testimony, was again denied. The same matters are presented here.

The defendants, each twenty-two years of age, were arrested on December 21, 1965. They had resided in

rented quarters at 732 East 10th Avenue in Denver and at the time of their arrest had either moved, or were contemplating moving, into an apartment at 1719 Pennsylvania Street in Denver, herein referred to as the apartment. The apartment, consisting of five rooms, a kitchen and a bathroom, had been occupied until the time of the arrest or until shortly prior thereto by members of a "folk music bunch" called the Children, the leader of which, according to Petty's information, had been under bond to appear on a narcotics charge and had disappeared.

The apartment was in an utidy condition. Sleeping accommcdations consisted of mattresses on the floor. Automobile parts were strewn about; and, in addition, there were boxes, junk, women's clothing and some items of furniture. The ownership of the contents of the apartment was not established except that on the night before the arrest Petty had brought his own stereophonic equipment to the apartment. At the time of the arrest Smith had on his person a receipt from Public Service Company of Colorado dated December 17, 1965 in the amount of $35. This represented a meter deposit for the apartment. There was testimony to the effect that immediately prior to December 21, 1965 the lock on the door leading into the apartment was broken and the door cou'd not be locked.

Late in the morning of December 21, 1965, officer C. A. Johnson of the Denver Police Department was looking for a burglary suspect who was reported to have long hair. Smith, who had long hair, was standing at the corner of the block in which 732 East 10th Avenue is located. Johnson arrested him without a warrant for suspicion of burglary. Johnson obtained the assistance of two other police officers and, apparently learning from Smith that he resided at or had resided at 732 East 10th Avenue, the four went to that address. Smith remained outside with the other two police officers and Johnson with the assistance of the manager of the premises

entered the quarters occupied or formerly occupied by the defendants. Smith gave the officers the 1719 Pennsylvania Street address and, according to some of them, stated that he resided there. They then proceeded to the apartment.

Petty was attending Opportunity School. He testified that he left the school about noon and went in search of Smith, going first to 732 East 10th Avenue and then to 1719 Pennsylvania Street where he encountered Smith, the three officers above-mentioned, and a detective of the Denver Police Department. Some of the police officers testified that Petty was already at the apartment when they arrived. The officers and the detective searched the apartment finding in one room near the stereo equipment a pasteboard box which contained marijuana, Petty's naval discharge certificate and a navy reimbursement certificate made out to Petty. In another room they found an oatmeal carton in which there was marijuana. Petty was then placed under arrest. Petty had clothing in a laundromat nearby and the officers accompanied him to this establishment in order that he might obtain his laundry. Some of the officers testified that Petty had said that certain items of women's apparel at the apartment belonged to his wife. Petty testified that he was not married. He denied making any such statement and denied any knowledge of ownership of the apparel.

The police personnel submitted to the defendants a form of consent to search the apartment and each of the defendants signed this form. The testimony was in conflict as to whether any oral consent to search was given, and as to whether the written consent to search was executed prior to or after the search. It was also in conflict as to whether the defendants signed and delivered the written consent voluntarily. The officers and detective testified that the defendants orally and voluntarily granted permission in advance to search and that they signed and delivered the consent voluntarily prior

to the search. Smith did not take the witness stand but *in camera,* outside the presence of the jury and in connection with the motion to suppress evidence, he testified: that he signed the consent to search by reason of fear and what the police would do to him if he did not; that he was told unless he consented to the search he would be thrown in jail; and that the consent form was first presented to him and Petty after the search of the apartment. Petty testified in his own behalf and gave similar testimony as to the involuntary character of the execution of the consent and that it was presented and signed after the search. The court denied the motion to suppress and admitted into evidence the consent to search and the products of the search, stating:

"The Court does not rule as a matter of law that the search was involuntary. The question is one for the jury and the jury will be specifically instructed that before they can find the defendants guilty they must find that the search was voluntary and that there was a voluntary waiver."

 There was no direct evidence that either of the defendants had possession of the marijuana. However, a conviction for possession may be predicated upon circumstantial evidence. *Mickens v. People,* 148 Colo. 237, 365 P.2d 679. A conviction of illegal possession may be based upon evidence that the marijuana, while not found on the person of the defendant, was in a place under his dominion and control. *Duran v. People,* 145 Colo. 563, 360 P.2d 132, *Gonzales v. People,* 128 Colo. 522, 264 P.2d 508. If possession is established, knowledge of the character of the drug and the fact that it is possessed can be inferred therefrom. See Annot., 91 A.L.R.2d 821-26. Possession need not be exclusive and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control thereof. *Gallegos v. People,* 139 Colo. 166, 337 P.2d 961.

 However, where a person is in possession, but not exclusive possession, of the premises, it may not be

inferred that he knew of the presence of marijuana there and had control of it unless there are statements or other circumstances tending to buttress the inference. *Evans v. United States,* 257 F.2d 121; *People v. Antista,* 129 Cal. App.2d 47, 276 P.2d 177. Similarily, joint possession cannot be established by the fact that the defendant is or has been in the company of one having possession of the substance in the absence of an additional independent factor linking the defendant with it. *State v. Faircloth,* 181 Neb. 333, 148 N.W.2d 187; *State v. Hunt,* 91 Ariz. 149, 370 P.2d 642; *State v. Carroll,* 90 Ariz. 411, 368 P.2d 649. These rules lend specificity to the general rule expressed in *Gonzales v. People, supra,* and other Colorado decisions that, when the evidence in a case is wholly circumstantial, the trial judge must be satisfied that it excludes every reasonable hypothesis of innocence before he can submit it to the jury.

■ Viewing the testimony in a light most favorable to the People, it disclosed only the following matters relating to Smith's alleged possession of the marijuana: (1) He and Petty were roommates; and (2) He had possession, but not exclusive possession, of the apartment. There being no other circumstances indicating any information on his part as to the presence of marijuana at the apartment or possession thereof by Petty, Smith's motion for judgment of acquittal should have been granted.

■ As to the defendant Petty, the proximity of the cardboard box containing marijuana to his stereo equipment and the location of his navy papers in the box constitute sufficient circumstances, in addition to the fact that the marijuana was in an apartment occupied by him nonexclusively, to sustain the verdict of guilty on the count charging possession of a narcotic drug.

■ In the conspiracy counts against each of the defendants it was charged that they conspired to possess with "each other" and "with a person or persons unknown." There was no evidence of a conspiracy with

any persons unknown. The only evidence of conspiracy was the same as that supporting possession. As the evidence was insufficient to establish Smith's guilt as to possession, it must follow that the conviction of Smith on the conspiracy count must fall. *People v. Way,* 165 Colo. 161, 437 P.2d 535; *Robles v. People,* 160 Colo. 297, 417 P.2d 232. This leaves no coconspirator for Petty and his conviction of conspiracy must therefore also be reversed. *Bradley v. People,* 157 Colo. 530, 403 P.2d 876.

Under *Compton v. People,* 166 Colo. 419, 444 P.2d 263 the trial court must make a finding as to whether or not a voluntary consent to search was given by Petty. In the event that the court makes a finding based on the evidence already submitted at the trial that Petty voluntarily consented to the search, the verdict of guilty against Petty on the possession count must stand. In the event that the trial court finds that consent to search the apartment was not voluntarily given by Petty, it must then make a determination as to whether the search of the apartment was incidental to a lawful arrest to the end that there could then be testimony as to the search and introduction in evidence of the fruits thereof. If the court determines that the search was so incidental, then the verdict on the possession count against Petty must stand; but, if it be determined that there was no voluntary consent to the search and that the search was not so incidental, it should order a new trial of Petty on the possession count.

The matter is remanded to the trial court with directions to enter judgments of acquittal on both counts against Smith and on the conspiracy count against Petty, and to proceed with respect to Petty in accordance with the views herein expressed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE PRINGLE concur.