Michael Lee COLLINI, Appellant,

v.

The STATE of Texas, Appellee.

No. 44333.

Court of Criminal Appeals of Texas.

Nov. 29, 1972.

Haight & DeWees by William H. Haight, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong, Charles E. Roberts and Richard D. Woods, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for possession of narcotics, to-wit: heroin. Appellant was convicted by a jury on a plea of not guilty and his punishment was assessed at 11 years.

Appellant, through his retained attorney, appealed this judgment, but no brief was filed in the trial court as required by Article 40.09 § 9, Vernon's Ann.C.C.P. After the expiration of the time allowed for such filing the trial judge ordered that the record be transmitted to this court. In a per curiam opinion [1] this court affirmed the judgment and noted that no brief had been filed in the trial court, that nothing contained in the record should be considered as unassigned error and that no question based on indigency was raised.

Subsequently, it came to the attention of the trial court that the appellant was not represented by counsel, either retained or court appointed, for appellate purposes. Appellant executed an affidavit of indigency with the trial court. On February 2, 1972, this court, on motion by the State, set aside the previously entered order of affirmance and abated the appeal for the purpose of allowing the trial court to take steps to provide effective assistance of counsel on appeal and to conduct such proceedings in the trial court as may be required under the provisions of Article 40.-09 § 9, supra. Steel v. State, 453 S.W.2d 486 (Tex.Cr.App.1970); Anders v. State, 471 S.W.2d 584 (Tex.Cr.App.1971). The trial court subsequently appointed counsel to represent the appellant on this appeal.

Appellant's first four grounds of error challenge the sufficiency of the evidence to show that the appellant was in possession of heroin.

L. C. Christensen, a narcotics investigator for the Bexar County District Attorney's office, stated that he received information from a credible and reliable informer to the effect that Michael Collini was in possession of heroin. He obtained a search warrant based on this information around 3:30 p. m. on August 6, 1970. This search warrant authorized the search of a house and premises having the address of 247 Venice and being under the control of Mrs. Leila Norville [2] and Michael Collini. The warrant commanded the sheriff or any other officer of Bexar County to search the premises for narcotic drugs, to-

1. See Article 44.33 § VIII, Vernon's Ann. C.C.P.

2. Mrs. Norville's first name appears in the search warrant as *Leila*, whereas in the statement of facts it appears as *Lelia*.

wit: heroin, and to arrest Mrs. Norville and Collini. Christensen testified that on the afternoon of August 6, 1970, he and his partner, Billy Cunningham, who was also a District Attorney's narcotics investigator, placed the house under surveillance, but since "there wasn't any activity" the officers left around 5:30 p. m. and returned at approximately 8:00 p. m. that same evening.[3] Appellant drove up to the house at 247 Venice around 9:15 p. m.[4] The officers were watching for the appellant from a church which was between 150 and 300 feet from the house. Upon seeing the appellant's car approach the house, the officers immediately got in their vehicles, drove down the street and parked across from Mrs. Norville's house. Christensen went to the front door while Cunningham went around to the back of the house. Christensen further testified that "maybe five minutes" had elapsed from the time the officers first saw the appellant to the time he entered the house. The appellant was never seen, by either officer, going around to the back of the house. Christensen knocked on the front door and asked if the appellant was there. When the appellant came to the door, Christensen stated he had a search warrant and he read the warrant to the appellant. Christensen asked the appellant which one of the rooms was his, whereupon the appellant went to a back bedroom and stated, "[t]his is where I am staying." Christensen related that he searched this bedroom, then "looked through a little bit" in the living room and the kitchen and then went out into the backyard. Once outside, Christensen and Cunningham, accompanied by the appellant, proceeded to search the garage.[5] After looking "around the doors and molding under the windows and facing" on the backside of the house, Christensen revealed that just to the left of the steps leading from the kitchen into the backyard there was a small piece of concrete that "just didn't look right and I picked this piece of concrete up and there was a small paper bag, wrapped up, and there was a little hole, sort of, dug under that piece of concrete." A search of the bag revealed narcotic paraphernalia and what was later found to be heroin and marihuana.[6] Appellant was placed under arrest and his rights were read to him.

At the time the officers arrived at 247 Venice, the persons present included: Appellant, Mrs. Leila Norville, appellant's girlfriend,[7] and appellant's 10-year old brother. Sometime during the search, another couple, appellant's "in-laws," arrived. When questioned about why appellant was the only one arrested after the evidence was found, Christensen stated, "Mike (appellant) was the only addict that I knew of there." Later, he was asked why Mrs. Norville was not arrested, as the warrant commanded, and he replied, "Usually, you know who is using heroin and who are addicts and who isn't and it is foolish to take a bunch of people down that is not using heroin. And, I don't think his grandmother is using heroin."

3. There was a third officer, a detective with the San Antonio Police Department, who accompanied Christensen and Cunningham as they watched the house on the afternoon of August 6th, but the detective did not return with the other two officers in the evening.

4. Cunningham subsequently testified that the appellant arrived at 247 Venice at *9:50 p. m.* (emphasis added).

5. Christensen testified that when he and Cunningham searched the garage they only shined their flashlights in and looked around. Cunningham testified that they made a detailed search of the garage; some 10 to 15 minutes.

6. The contents of the brown paper bag included: one silver spoon, one small cigarette wrapper containing marihuana and wrapped with a piece of wire, a piece of wrapping paper off of a cigarette package, 3 capsules of heroin and a disposable syringe with a needle attached.

7. Christensen testified that he knew this girl and that her grandmother had told him that she (appellant's girlfriend) was a "runaway."

Mrs. Norville testified that she owned the house and premises at 247 Venice where she lived with her 10-year old grandson and 16-year old granddaughter; that the appellant had lived with her at one time, but that he had moved out in March or April of 1970. She stated that appellant did not live there in her house on August 6, 1970, but he lived somewhere on Elizabeth Road. She further testified that the appellant "would come by occasionally" and "called . . . on the phone a lot." Mrs. Norville related that in the room, which was previously the appellant's, there was a folding half-bed and 2 or 3 suits which belonged to the appellant.[8]

Prior to the time the appellant and the officers arrived, Mrs. Norville said she had been out in the backyard picking up paper and trash and sweeping the steps. She remembered that she picked up the piece of concrete, under which the narcotic was found, and at that time there was nothing underneath it. Appellant and his girlfriend arrived and Mrs. Norville was coming in the house when the investigators also arrived. She stated that the appellant had not gone into the backyard prior to the arrival of the officers.

Mrs. Norville further testified that the officer knocked on the front door and then just came on in the house. She related that he walked into the room previously occupied by the appellant and "grabbed Mike and pushed him against the wall" and handed him a piece of paper and said "read this." She also related that while this was occurring she walked into the kitchen and observed through a screen door the figure of a man raise up in the

backyard. She later learned this was Investigator Cunningham.

Thomas A. Robles testified that he managed a 12-unit apartment complex at 140 Elizabeth Road and that the appellant was a resident in that complex for the months of July, August and September of 1970. He further stated that the appellant paid a property deposit and rent for all 3 months and that he saw appellant quite frequently; "practically every day."

Officer Jerry Townsend of the San Antonio Police Department testified that on August 2, 1970, he stopped Michael Collini to give him a ticket. When appellant produced his driver's license, Officer Townsend asked him if the address on the license was correct and the appellant answered affirmatively. Townsend stated that the address on the license was 247 Venice.

■ The term "possess" in a narcotics case under Article 725b, Vernon's Ann.P.C., means "actual control, care and management of the narcotic drug."[9] Cuellar v. State, 169 Tex.Cr.R. 604, 336 S.W.2d 159 (1960); Massiate v. State, 365 S.W.2d 802 (Tex.Cr.App.1963); Shortnacy v. State, 474 S.W.2d 713 (Tex.Cr.App.1972); Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972), and cases there cited. See also Hernandez v. State, 484 S.W.2d 754 (Tex.Cr.App.1972); Payne v. State, 480 S.W.2d 732 (Tex.Cr.App.1972); Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App.1972); Kinkle v. State, 474 S.W.2d 704 (Tex.Cr.App. 1972).

■ In proving possession in narcotics cases, it is not necessary to prove that the

8. Christensen stated that there were various types of men's clothing in this bedroom, i. e., undercloths, shirts, pants, suits and shoes.

9. In further clarification of the term "possess," this court in Shortnacy v. State, 474 S.W.2d 713, 716 (Tex.Cr.App.1972), quoted from Brown v. State, 481 P.2d 475, 477 (1971), in which the Oklahoma

Court of Criminal Appeals wrote: "Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed." See Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972); Payne v. State, 480 S.W.2d 732 (Tex.Cr.App.1972); Hausman v. State, 480 S.W. 2d 721 (Tex.Cr.App.1972).

accused had exclusive possession of the narcotics in question. Adair v. State, supra, and cases there cited; Harvey v. State, 487 S.W.2d 75 (1972); Buntion v. State, 476 S.W.2d 317 (Tex.Cr.App.1972); Shortnacy v. State, supra; Ellis v. State, 456 S.W.2d 398 (Tex.Cr.App.1970).

■ Where there is an absence of direct evidence that an accused was in exclusive possession of a narcotic, then possession, if any, must be proved by the introduction of circumstantial evidence.

■ Various facts and circumstances surrounding a search and arrest may be shown to prove that the accused and another person or persons acted together in jointly possessing a narcotic. Adair v. State, supra; Harvey v. State, supra; Ochoa v. State, 444 S.W.2d 763 (Tex.Cr. App.1969); Perry v. State, 164 Tex.Cr.R. 122, 297 S.W.2d 187 (1957).

In Glenn v. United States, 271 F.2d 880 (1959), the Sixth Circuit wrote: "The mere presence of the accused at the scene of a crime does not, of itself, justify drawing an inference that he participated therein." Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App.1969), and cases cited in footnote # 1 of the majority opinion; Reid v. State, 474 S.W.2d 702 (Tex.Cr.App.1972); Kinkle v. State, supra; Shortnacy v. State, supra; Harvey v. State, supra.

In Adair v. State, supra, this court quoted from Brock v. State, 162 Tex.Cr.R. 339, 285 S.W.2d 745 (1956):

"A conviction on circumstantial evidence cannot be sustained if the circumstances proven do not exclude every other reasonable hypothesis except that of the guilt of the accused; and proof amounting only to a strong suspicion or mere probability is insufficient."

Culmore v. State, supra; Reid v. State, supra.

■ An accused's knowledge that the substance in his possession is a narcotic is an essential element of possessing a narcotic within the meaning of § 2(a) of Article 725b, Vernon's Ann.P.C.; even though knowledge of the alleged possessor or his intention to possess is not specifically mentioned by the language of this article. See Fawcett v. State, 127 S.W.2d 905 (Tex.Cr. App.1939); Gonzales v. State, 157 Tex. Cr.R. 8, 246 S.W.2d 199 (1951); Sosa v. State, 161 Tex.Cr.R. 193, 275 S.W.2d 655 (Tex.Cr.App.1955); Ramos v. State, supra; Payne v. State, supra; Hernandez v. State, supra; Harvey v. State, supra.

■ The evidence presented by the State must affirmatively link the person accused of possession to the narcotic which he is alleged to have possessed. Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1972); Hausman v. State, supra; Payne v. State, supra; Harvey v. State, supra. This affirmative link is established by showing additional independent facts and circumstances which may indicate the accused's knowledge of the narcotic as well as his control over such. See Adair v. State, supra; Harvey v. State, supra.

■ In the case at bar there is conflicting evidence as to the place of residence of the appellant. Even though the appellant may have rented an apartment on Elizabeth Road, an inference can still be drawn from the evidence that he had possession and control of the premises where the heroin was found, i. e., 247 Venice. This possession and control of the premises is, however, not exclusive. Where an accused is not in exclusive possession of the premises, it cannot be concluded that he had knowledge of the narcotic and had control of it unless there are additional independent facts and circumstances which affirmatively link the accused to the narcotic. Harvey v. State, supra; Adair v. State, supra; Payne v. State, supra; Hausman v. State, supra. See Petty v. People, 167 Colo. 240, 447 P.2d 217 (1968), and cases there cited.

■ Viewing the evidence in the light most favorable to the jury's verdict, we

find only that: (1) a substance later shown to be heroin was discovered in the backyard of a house where appellant lived, although possession and control of such premises were not exclusive; and (2) that appellant was arrested because, as the officer asserted, he was the only narcotic addict present. The basis for the officer's belief is not revealed. The record is absolutely and totally void of any other independent facts or circumstances tending to show that this appellant had any heroin in his possession.[10] Can we conclude that this evidence would be sufficient to affirmatively link the appellant to the narcotic and show that he was in possession of such? To arrive at such a conclusion would be to torture the facts.

Finding that the evidence is insufficient to support the conviction, the judgment is reversed and the cause remanded.

---

10. The able State's brief illustrates facts which the State contends "present the totality of circumstances proving with certainty Defendant's guilt excluding other reasonable hypothesis and adequately furnishing the requisite link between Appellant and the heroin." These facts presented do illustrate a "totality of circumstances" which prove that the appellant had non-exclusive possession and control over the premises; but they do not prove that the appellant was guilty of possessing heroin excluding other reasonable hypothesis.