Commonwealth *v.* Hannan, et ux., Appellants.

Argued April 13, 1973. Before WRIGHT, P. J., WAT-KINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Herbert G. Labbie,* with him *Morris Cohen,* for appellants.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Robert L. Campbell* and *Carol Mary Los,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 23, 1974:

Appellants contend that the evidence produced by the Commonwealth was insufficient to establish beyond a reasonable doubt that they were illegally in possession of dangerous and narcotic drugs.

In order to understand the legal significance of the location of the drugs seized in the raid upon the appellants' home, and in order to provide the factual framework from which the evidence introduced at trial was purportedly linked to the appellants, it is necessary to give a somewhat detailed description of the house, its physical layout, and its occupants on the date in question and for a period immediately preceding the search.

The subject of the search was the seven-bedroom white double brick house belonging to the Hannans. The residence was located at 3703 Penn Avenue in the Lawrenceville Section of Pittsburgh. The house consisted of three floors, including a converted attic. On

the first floor, there was a kitchen, a laundry room, a den with a powder room, a dining room, and two converted bedrooms off the dining room. On the second floor, there was a master bedroom with a powder room, a common bathroom in the hallway, and three other bedrooms of varying size. The third-floor consisted of a small apartment, including a bedroom, without a bath.

It was admitted at trial that prior to 1967 (the year in which appellants' son suffered traumatic injury to his leg resulting in partial amputation of his foot), the entire Hannan family resided on the second floor of the residence. After 1967, the Hannans made certain alterations, converting the attic to a third-floor small apartment, including a bedroom, and converting two first-floor rooms to bedrooms. The Hannans' son lived in one of the bedrooms and the Hannans, allegedly for reasons of remaining near their injured son, testified that they moved their living quarters to the second first-floor bedroom. The entire second floor was used for rental and visiting purposes. Uncontradicted evidence was produced at trial showing that during a period from 1967 to May, 1969, as many as six nurses and physical therapists engaged in study at the nearby St. Francis Hospital had rented rooms and had lived on the second floor. On the day in question, the following persons were either living in or staying at the Hannan home: the Hannans and their son stayed in the two bedrooms on the first floor; their daughter and a niece, Deborah Love, occupied the third-floor apartment; a nurse, home for Christmas vacation, was renting one of the bedrooms on the second floor; and two friends of the appellants' children, Terrence Sullivan and Sandy Anderson, were staying in two of the other bedrooms of the second floor; two of Mrs. Hannan's sisters, visiting from Florida, were staying for a few days in the room rented by the absent nurse. The master bedroom, it was alleged, was unoccupied.

In addition to those residing or staying at the house on the date of the drug raid, a number of defense witnesses testified that they had attended a Christmas party at which some 20 teenagers and young adults had participated.

It is within this context that on December 29, 1969, Pittsburgh police, pursuant to a search warrant, searched the Hannan house. In the course of their search, police uncovered several plastic vials containing unlabelled pills and capsules later identified as narcotic and dangerous drugs of the prescriptive variety. These vials were found in the master bedroom in a purse and dresser identified as belonging to the appellant Mrs. Hannan. In the main bathroom on the second floor within a drawer in a metal cabinet, police found a bag containing a substance later identified as marijuana. In the first-floor front bedroom, occupied by the appellants' son, police found the youth and his friend Mr. Sullivan, and after a search discovered several vials of pills and capsules having labels with prescriptions for both Harold Hannan, Jr. and Terrence Sullivan. Police also found what they believed to be a marijuana butt in the ashtray near the bed in the son's bedroom. As a result of these seizures, police arrested the appellants, their son and Mr. Sullivan.

The four defendants were indicted on charges of violation of The Drug, Device and Cosmetic Act, possession of narcotic drugs and possession of dangerous drugs without prescription. The defendants pleaded not guilty, and a trial commenced before the Honorable Leo McKay, specially presiding, and a jury on November 23, 1971. At the close of Commonwealth's case, defense counsel demurred to various indictments. Because the butt found in the son's bedroom was never identified as marijuana, and because the drugs found therein were all prescribed to the individual defendants, demurrers were sustained as to the charges against Harold

Hannan, Jr. and Terrence Sullivan. Demurrers were denied, however, with respect to the appellants, Mr. and Mrs. Hannan. The Commonwealth stated that the discovery of unlabelled drugs, identified as dangerous and narcotic drugs by the Crime Laboratory in a purse and dresser belonging to Mrs. Hannan would be sufficient to convict her on the charges against her.[1] In addition, as to the marijuana found in the main bathroom, Commonwealth's position as to Mr. Hannan was as follows: "MR. TOMKO (district attorney in a discussion in Judge's chambers) : My argument would be that as far as we could ascertain, the defendant, Harold Hannan, Sr., is the record owner of that home, and that certain items, to wit, the bag of marijuana, was found in a common room in that home. That would be our argument as to Harold Hannan, a room to which he did have access."

At the conclusion of the defense case, during which Mrs. Hannan insisted that the vials found in her purse and dresser were put in plastic vials to make it unnecessary to carry large bottles of drugs and that the drugs were prescribed either for her back ailments, her son's foot injury or leftovers from her father's illnesses who had died two years earlier, the jury returned convictions on all charges against both Mr. and Mrs. Hannan. The trial court, nevertheless, granted Harold on the charge of possession of percodan as a narcotic drug in Count 1. Motions were denied on the mari-Hannan's motion in arrest of judgment on Count 2 and

---

[1] The chemist who analyzed the seized items testified that they consisted of 15 capsules of Tuinal, 32 tablets of Percodan, 2 tablets of Valium, 25 tablets of Buta-arbital, a tablet of Dextro-Amphetamine, and some pills of the over-the-counter variety, Coricidin and aspirin. Except for the latter two, the aforementioned pills were all prescription drugs described in The Drug, Device and Cosmetic Act as dangerous or narcotic drugs.

juana conviction against Harold Hannan, and on both counts against Helen Hannan.

In reviewing the conviction of Harold Hannan, it must first be said that the arrest of judgment on the conviction attributed to drugs found in the personal belongings of his wife is consistent with the principle in the law that when the illegal possession of contraband is charged, the evidence must establish that the accused had a conscious dominion over the contraband. *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971). There was simply no evidence that Mr. Hannan exercised any control or had knowledge of the existence of those vials or their contents.

As to the conviction on the marijuana charge, a delicate legal question is posed by the facts of this case. May an individual be convicted of possesesion of contraband simply because contraband is found in a location of which the accused is the record owner or named tenant? Commonwealth submits that because Mr. Hannan was the owner of the searched premises and because of his presence in the house, it should be presumed that Hannan had "access" to the various nooks and crannies of the residence. He must be held to have had "possession" of its contents, in the instant case, the bag of marijuana found in a drawer full of toiletries, pins and boxes in a main bathroom of the house. This very argument has been recently rejected by the Pennsylvania Supreme Court in *Commonwealth v. Fortune,* 456 Pa. 365, 318 A. 2d 327 (1974). In that case, police found narcotic drugs strewn on a first-floor kitchen floor. The premises were occupied by the appellant and four other persons at the time of the search. The arrest of the appellant was justified because she was the legal resident of the premises. In reversing the appellant's conviction, the Court stated at 328-329:

". . . The illegal possession of narcotic drugs is a crime which 'by its very nature is unique to the indi-

vidual. By definition, the possessor is the only person who could commit this crime. Guilt by association ... is unacceptable.' Commonwealth v. Reece, 437 Pa. 422, 427, 263 A. 2d 463, 466 (1970). *See also* Commonwealth v. Tirpak, 441 Pa. 534, 272 A. 2d 476 (1971). The presence of one person in a group of people at the scene 'is not of critical import in drug possession cases.' Commonwealth v. Reece, 437 Pa. 422, 427, 263 A. 2d 463, 466 (1970). *See also* Commonwealth v. Tirpak, 441 Pa. 534, 272 A. 2d 476 (1971). '[T]he fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered. . . .' Commonwealth v. Davis, 444 Pa. 11, 16, 280 A. 2d 119, 121 (1971), *quoting* 9 J. Wigmore, Evidence §2513 (3d ed. 1940).

"In this case, no narcotic drugs were found on the person of the appellant. None were found anywhere else on the premises. Those that were found were not in a place normally accessible only to a resident of a home. . . . There is no evidence that the appellant had any knowledge of the presence of the drugs in her home prior to the arrival of the police. The appellant's residency in the home does not establish any such knowledge. We cannot assume that a resident of a home, where guests are present, knows of the full contents of the premises."

In this case, no drugs were found on the person of the appellant Mr. Hannan nor was there any evidence of knowledge of the presence of drugs in his home. Nine persons were present at the time of the search, all of whom were staying at the house for varying lengths of time. A nurse, renting one of the bedrooms, was home for Christmas vacation. And, just four days before the search, twenty youths had attended a Christmas party at the Hannan house. Each and every individual could have had "equal access" to the drawer in the main bathroom. Unlike the drugs found in *Fortune,*

the bag of marijuana was found secreted in a drawer amidst numerous items in a metal cabinet. It is sheer speculation and certainly not that quality of evidence that would be sufficient to convict beyond a reasonable doubt to presume that Mr. Hannan had either knowledge of or indeed, "possessed" the marijuana discovered by the police. The same holds true with respect to Mrs. Hannan, who while having access to the same bathroom, shared that accessibility with a number of other individuals.

We are not persuaded, however, that appellant's contention that the vials found in her purse and dresser could not be concluded to be in appellant's dominion and control. There is no dispute that the purse and dresser belonged to Mrs. Hannan. Mrs. Hannan admitted knowledge and possession. The vials contained drugs identified as dangerous and narcotic drugs the possession of which without prescription constitutes violations of the law. While Mrs. Hannan sought to explain the existence of the drugs as prescription medicine, she did not come forward with evidence establishing same. It was within the province of the jury to disbelieve the appellant's explanation, and conclude by the reasonable inference available to them that Mrs. Hannan possessed said drugs illegally. *Commonwealth v. Malone,* 444 Pa. 397, 281 A. 2d 866 (1971).

While we affirm the convictions relating to the drugs found in Mrs. Hannan's purse and dresser, we must remand the case to the court below for possible resentencing. Appellant was convicted on two counts: one charging her with possession of *narcotic* drugs, to wit, marijuana and percodan; and, one charging her with possession of various *dangerous* drugs. Since we hold that neither Mr. Hannan nor Mrs. Hannan may be held to have had possession of the marijuana found in the main bathroom of the house, only that part of Count 1 which charges Mrs. Hannan with possession

of percodan may be sustained. It may be that, under the circumstances, the sentencing judge would modify the sentence imposed. Under the law, the lower court should be given the opportunity to review the sentence. *Commonwealth v. Lockhart,* 223 Pa. Superior Ct. 60, 296 A. 2d 883 (1972).

The judgment of sentence as to Harold Hannan is reversed, the conviction vacated, and appellant ordered discharged. The appellant Helen Hannan's sentence is vacated, and the case remanded for resentencing.