JAMES MARTIN; LINDA MARTIN *v.* STATE OF INDIANA

[No. 2-976A328. Filed February 21, 1978.]

504

*Kenneth T. Roberts, Wilson, Coleman & Roberts*, of Indianapolis, for appellants.

*Theodore L. Sendak*, Attorney General, *Robert L. Clegg, III*, Deputy Attorney General, for appellee.

SULLIVAN, P.J. — Appellants Linda and James Martin were found guilty as charged on two counts of violating the Indiana Controlled Substances Act: possession of heroin in an amount under ten (10) grams[1] and possession of marijuana in an amount under twenty-five (25) grams.[2] On appeal, it is argued that the evidence was insufficient to prove possession beyond a reasonable doubt as to either of them.[3]

---

1.   IC 35-24.1-4.1-6 (Burns Code Ed. 1975) became effective on July 29, 1975 before the offense was allegedly committed.

2.   See IC 35-24.1-4.1-11 (Burns Code Ed. 1975).

3.   Both defendants waived any error in the trial court's ruling on their motion for judgment of dismissal at the close of the State's evidence by electing to proceed with the presentation of evidence following the denial. Ind. Rules of

The two controlled substances were confiscated during an authorized search of the Martin residence. The Indianapolis Police Officers who executed the search warrant were the State's main witnesses at trial. It is necessary to recount their testimony in some detail in order to understand the legal significance of the location of the drugs and the other circumstantial evidence linking them to Linda and James Martin.

Officer Wilson testified that he and Officer Layton approached the apartment from the second floor landing and first knocked on the door. He saw "a figure in the picture window" and heard movement inside. Although there is some conflict in the two officers' testimony regarding what next occurred, according to Officer Layton, they both observed Linda Martin coming to the door. Officer Layton announced at this time that they were police officers with a search warrant, whereupon he heard running which Layton, in his trial testimony, attributed to Linda Martin based on a statement Officer Wilson made to him. Officer Wilson proceeded immediately to open the door with a key they had obtained earlier from the manager's office.

Once inside the apartment, Officer Wilson saw Linda Martin run down the hallway to the left of the living room. He followed her to the bathroom located off the hallway near the second bedroom and found her "just standing there [with] the water . . . running in the sink . . . [and] in the stool." Officer Layton meanwhile found a houseguest standing, "naked except for a small robe . . . on his back", at the wash basin in the bathroom connected to the master bedroom. In the wash basin he observed a grey container which had an unidentified residue and was filled with water.

Thereafter, while the police officers were obtaining identification from Linda Martin and the houseguest, James Martin entered the apartment with another man. The police discovered a gun in his belt during a pat down search. In the subsequent search of the apartment, during which time James Martin remained in the

Procedure, Trial Rule 41(B); *Rose v. State* (1976), 168 Ind. App. 674, 345 N.E.2d 257, 258; *Barrett v. State* (1975), 164 Ind. App. 460, 329 N.E.2d 58, 60; *Pinkston v. State* (1975), 163 Ind. App. 633, 325 N.E.2d 497, 498.

living room, Officer Layton found the two controlled substances, marijuana and a plastic bottle containing heroin, in the top drawer of a dresser in the master bedroom.

The remaining testimony at trial concerned who had been using the master bedroom. The evidence most favorable to the State supports the inference that the Martins both resided at the apartment and, as husband and wife, occupied the room in question.

There was testimony at trial that the houseguest had been using the master bedroom for a week prior to the arrest, while the Martins slept in the second bedroom (the children's room) near the bathroom where Linda Martin was found. James Martin also testified that he was frequently absent from the apartment because of an extra-marital involvement. However, the trier of fact was entitled to disbelieve this testimony, particularly in light of the other evidence adduced at trial. The Martins gave the apartment address as their residence when the police asked for identification. Linda Martin testified at trial that she and her husband ordinarily occupied the "master room". James Martin admitted being at the apartment "off and on" prior to (but not on) the day of the search and acknowledged that he kept "some" clothes in the master bedroom. Male clothing was found "hanging" in the master bedroom which would have fit the thinner James Martin as opposed to the houseguest. And Officer Layton testified that the luggage allegedly belonging to the houseguest was not in the master bedroom, as Linda Martin claimed, but in the hall outside the bedroom - - - - "about in the middle of the residence, the living room."

On the basis of such evidence, we affirm Linda Martin's conviction but are compelled to reverse James Martin's conviction.

I.

### EVIDENCE SUFFICIENT TO SUSTAIN LINDA MARTIN'S CONVICTION

Since possession of a controlled substance in Indiana may be founded upon either actual or constructive possession, we need only determine whether the evidence was sufficient to prove constructive possession.

In *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557, 558, our Supreme Court defined constructive possession as the "intent and capability to maintain control and dominion" over the substance. The opinion states that the requisite intent can be inferred from the voluntary commission of the act. In this regard the evidence must establish knowledge both of the item's presence and of its forbidden character.[4] *Id.; Phillips v. State* (1974), 160 Ind. App. 647, 313 N.E.2d 101. See also, *Greely v. State* (1973), 158 Ind. App. 212, 301 N.E.2d 850, 852; *Corrao v. State* (1972), 154 Ind. App. 525, 290 N.E.2d 484, 487; Annot., 91 A.L.R.2d 810, 821-27 (§5).

Regarding the capability to maintain control over the substance, proof that the accused had the drug on his person is not required. For constructive possession, the evidence need only establish the defendant's ability to control, that is, the ability to reduce the substance to his personal possession or to otherwise direct its disposition or use.[5] *E.g., Corrao v. State, supra.* See also, *Phillips v. State, supra*, 313 N.E.2d at 104 (Garrard, J., concurring).

Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. A possessory interest in the premises or area is generally held sufficient to show the ability to exercise control over drugs found therein. *Corrao v. State, supra* (control by registered owner of car). Yet a house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee. *Ludlow v. State* (1973), Ind. App., 302 N.E.2d 838, rev'd on other ground, (1974) 262 Ind. 266, 314 N.E.2d 750 (defendant gave his address as the premises where drugs were found). Additionally, the practical ability to control the area may be sufficient, as was the case in *Corrao v. State, supra,* where the driver,

---

4.   Our possession statutes refer specifically to "knowing possession."

5.   "Control" means the ability to exercise a restraining or directing influence over something. Webster's New International Dictionary of the English Language (2d ed.), p. 580.

as well as the owner of the car, was found in control of marijuana located in the trunk on the theory that he had the car keys and so could have entered the trunk.

As to the quantum of proof necessary to sustain a conviction for knowing possession, evidence that a person has *exclusive* control of the premises permits the inference that he has constructive possession of any drugs found on those premises. The element of knowledge can reasonably be inferred from evidence of exclusive control alone. *E.g., Phillips v. State, supra.*

In the instant case, however, we must determine whether the evidence was sufficient to prove constructive possession when the defendant, Linda Martin, was not in exclusive control of the area where the controlled substances were found. The record discloses that Linda Martin shared with her husband joint occupancy of the master bedroom and that a third person (the houseguest), even if he did not sleep there, also had access to the room.

These circumstances present greater evidentiary difficulties because *knowing* possession on the part of Linda Martin cannot be reliably inferred from evidence of her joint access and control of the premises alone. Mere presence in the vicinity or association with one having possession of drugs is not sufficient to sustain a conviction. See *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412, 416; *Cannon v. State* (1975), 166 Ind. App. 237, 335 N.E.2d 229, 231-32. Some additional, independent proof is necessary to pronounce as reasonable an inference that Linda Martin individually, or together with others, knowingly possessed the contraband.

Accordingly, an increasing number of jurisdictions apply the following rule: Where the accused did not have exclusive control of the premises, it may not be inferred that he knew of the presence of the drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. There must be additional evidence, apart from that of defendant's nonexclusive control of the premises, to permit an inference of knowledge. See Annot., 56 A.L.R.3d 948.

In Indiana this nonexclusive possession rule was explicitly adopted in *Greeley v. State, supra,* (holding that the evidence failed to establish Greely's knowledge of the presence of drugs in his backyard), and is supported by other cases.[6] In *Thomas v. State, supra,* 291 N.E.2d at 559, the Supreme Court quoted with approval the following language from *Feltes et al. v. People* (1972), 178 Colo. 409, 498 P.2d 1128, 1131:

"A conviction of illegal possession may be based upon evidence that the marijuana, while not found on the person of the defendant, was in a place under his dominion and control. [Citations omitted.] If possession is established, knowledge of the character of the drug and the fact that it is possessed can be inferred therefrom."

The next two sentences from *Feltes,* the latter of which is omitted from the *Thomas* opinion, makes it clear that the above quoted language applies to exclusive possession only. With respect to nonexclusive possession, the Colorado court stated:

"Possession need not be exclusive and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control thereof. [Citations omitted.] However, where a person is in possession, but not in exclusive possession of the premises, it may not be inferred that he knew of the presence of marijuana there and had control of it unless there are statements or other circumstances tending to buttress the inference. [Citations omitted.]"

See also, *Corrao v. State, supra,* 290 N.E.2d at 487-88.

The record before us does disclose that additional evidentiary factor to link Linda Martin with the drugs found in the master bedroom. Upon learning that police officers were at the apartment for the purpose of executing a search warrant, she denied them

---

6. All the Indiana cases we have examined are in accord with this nonexclusive possession rule. In each case where a nonexclusive possession conviction has been sustained, an additional factor was present to connect the defendant with the contraband and thereby buttress the inference of *knowning* possession. *Thomas v. State, supra* (defendant seated at the table on which heroin was found in open view); *Ledcke v. State, supra* (drugs in a manufacturing setting and defendant's attempted flight); *Griffin v. State* (1972), 259 Ind. 205, 285 N.E.2d 644 (defendant admitted owning narcotic container); *Von Hauger v. State* (1970), 254 Ind. 297, 258 N.E.2d 847 (furtive gesture); *Moss v. State* (1975), 165 Ind. App. 502, 333 N.E.2d 141 (furtive gestures); *Thurman v. State* (1974), 162 Ind. App. 267, 319 N.E.2d 151 (defendant's admission and extremely close proximity to drug); *Corrao v. State, supra* (odor of marijuana).

entry. She was then discovered fleeing down the hallway and subsequently found standing in the bathroom with the water running in the sink and commode. The houseguest, who was the only other person in the apartment at the time, was engaged in similar furtive activity. From such suspicious behavior, the trier of fact was entitled to infer guilty knowledge, i.e., that Linda Martin knew of the presence of the controlled substances. *Cf., Von Hauger v. State* (1970), 254 Ind. 297, 258 N.E.2d 847.

The evidence need not establish that Linda Martin had exclusive possession. So long as the record supports the inference of knowing possession on her part, it is immaterial that she may have possessed the drugs jointly with another person.

## II.

### EVIDENCE INSUFFICIENT TO SUSTAIN JAMES MARTIN'S CONVICTION

When we apply the same standard of review to the evidence regarding James Martin, we find that the evidentiary requirements for a conviction of constructive possession have not been met.

The record discloses that James Martin resided at the apartment address and had shared occupancy of the master bedroom. This evidence merely shows that he had joint authority to control the room where concealed drugs were discovered and, without more, is not enough to sustain a conviction of knowing possession.[7]

Although there is evidence that James Martin had clothes hanging in the master bedroom, we do not know where. There is no evidence that any of his belongings were in the bureau drawer where the drugs were found or elsewhere about the bureau. James Martin, moreover, was not at the apartment when the police officers arrived. We do not know when he was last there, apart from

---

7. Joint occupancy of the room in which concealed drugs are found is not enough to sustain a conviction in those jurisdictions which adhere to the rule that knowing possession cannot be inferred from mere evidence of *nonexclusive* control of the premises. *E.g., Smith v. State* (1973), Fla., 279 So.2d 27; *State v. Bowers* (N.M.App. 1974), 87 N.M. 74, 529 P.2d 300; *Mulligan v. State* (1973), Wyo., 513 P.2d 180; *People v. Davenport* (1972), 39 Mich.App. 252, 197 N.W.2d 521; *Feltes et al. v. People* (1972), 178 Colo. 409, 498 P.2d 1128; *Petty v. People* (1968), 167 Colo. 240, 447 P.2d 217.

his testimony that he stayed at the apartment "off and on" but was not there on the day of the search prior to his arrival. However, the evidence does show that while James Martin was away, the houseguest had access, for some time at least, to the master bedroom. The record does not indicate whether the luggage allegedly belonging to the houseguest was full or empty, but either way his presence cannot be discounted. We cannot infer that the houseguest had just arrived or that he was about to leave and had all his belongings packed in light of Officer Layton's testimony that he encountered the houseguest "naked except for a small robe . . . on his back."

Nor can we find the requisite link to the drugs from evidence that James Martin had a gun in his belt. Unlike evidence of attempted flight and flushing a toilet upon confrontation with an imminent police search, carrying a gun on one's person is not suspicious behavior specifically related to drugs. See *United States v. Bethea* (D.C. Cir. 1971) 442 F.2d 790 (presence of three guns in car in which defendant was passenger did not indicate joint venture to commit drug-related crime).

The only other possible corroborating evidence is that the bedroom was shared by the Martins as husband and wife. But our survey of the joint possession cases in this and in other jurisdictions leads us to conclude that this added factor *under the circumstances present* is simply not enough.[8]

Even those jurisdictions which infer possession on the part of the husband as the presumptive "head of the household" would not do so on the facts at bar.[9] Georgia, for example, recognizes the

---

8. We do not decide whether the marital relationship would support an inference of knowledge under different circumstances.

9. We also note that in a number of cases the marital relationship has not been a sufficient basis for inferring knowledge on the part of the husband. *Delgado v. United States* (9th Cir. 1964), 327 F.2d 641 (common law spouses); *State v. Funk* (1973), Mo.App., 490 S.W.2d 354; *Smith v. State* (1973), Fla., 279 So.2d 27; *Willis v. State* (1975), Fla. App., 320 So.2d 823. See also, *United States v. DiNovo* (7th Cir. 1975), 523 F.2d 197, cert. denied, 423 U.S. 1016, 96 S.Ct. 449; *Evans v. United States* (9th Cir. 1958), 257 F.2d 121, cert. denied, 358 U.S. 866, 79 S.Ct. 98; *People v. Bolden* (1968), Ill. App., 237 N.E.2d 748; *People v. Monson* (1967), 255 Cal.App.2d 689, 63 Cal.Rptr. 409 (female defendant in cohabitation situation); *Commonwealth v. Hanna* (1974), 229 Pa. Super. 540, 331 A.2d 503.

rebuttable presumption that narcotics found on premises occupied by a married couple are possessed by the husband. *Landers v. State* (1966), 114 Ga.App. 687, 152 S.E.2d 431. Yet the presumption is not applicable where others, not members of the household, are present and had an equal opportunity to commit the crime. *Reed v. State* (1972), 127 Ga.App. 458, 194 S.E.2d 121. Accord, *State v. Baxter* (1974), 285 N.C. 735, 208 S.E.2d 696.

Although *United States v. Bridges* (8th Cir. 1969), 419 F.2d 963, appears to stand for the proposition that a jury is entitled to find possession by the husband when narcotics are found in the marital bedroom, we note that the opinion, immediately following the language to that effect, refers to additional incriminating evidence disclosed by the record.

It is true that the drugs here were found in what is normally considered a private room and inside a dresser drawer therein. But the record discloses that the houseguest was not a causal visitor and did in fact have access to the room. Under these circumstances, we cannot assume that James Martin had knowledge of the full contents of the room. *Cf., Commonwealth v. Hanna* (1974), 229 Pa. Super. 540, 331 A.2d 503. This is especially true in light of the fact that James Martin was not found on the premises, but arrived after the police had already gained entry.[10]

On the record before us, therefore, we can only conclude that the evidence was insufficient to prove James Martin had knowing possession. The prosecution apparently overlooked or failed to note the significance of possible evidence linking him with the drugs found. Although additional proof sufficient for conviction may have been available, we cannot re-prosecute the case for the State.

The conviction as to Linda Martin is affirmed; the conviction as to James Martin is reversed.

---

10. Defendant's absence has been a consideration in numerous cases. *See, e.g., Moreland v. State* (1975), 133 Ga.App. 723, 212 S.E.2d 866; *People v. Wolski* (1975), 27 Ill.App.3d 526, 327 N.E.2d 308; *Griffin v. State* (1973), Fla.App., 276 So.2d 191; *Mulligan v. State* (1973), Wyo., 513 P.2d 180, *supra; Osburn v. State* (1972), Okla. Crim. App., 497 P.2d 471; *People.v. Schriber* (1970), 34 A.D.2d 852, 310 N.Y.S.2d 551, aff'd 327 N.Y.S.2d 68; *People v. Antista* (1954), 129 Cal.App.2d 47, 276 P.2d 177.

White, J. concurs, and Buchanan, J. concurs with separate opinion.

## CONCURRING OPINION

BUCHANAN, J. — After reviewing the record and the case law in this and other states, I reluctantly concur. There is no case law supporting James Martin's (Martin's) conviction under these circumstances.

It should be emphasized that there is sufficient evidence from which the trial judge could infer that James had the ability to maintain control and dominion over the bedroom in which the drugs were found. Present in the marital bedroom when he arrived were his clothes and twenty-five (25) pairs of his shoes, which was sufficient evidence to create an inference that he was in possession of the bedroom on the day of the raid.

However, it does appear that Indiana has adopted the rule that if possession of property is *non-exclusive,* the prosecution must bring forth some evidence which would indicate the defendant had knowledge of the drug. *Greely v. State* (1973), 158 Ind. App. 212, 301 N.E.2d 850. If, in addition to non-exclusive possession, there had been flight, *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412, furtive gestures, *Moss v. State* (1975), 165 Ind. App. 502, 333 N.E.2d 141, close proximity by Martin to the contraband, *Thurman v. State* (1974), 162 Ind. App. 267, 319 N.E.2d 151, close proximity of the contraband to items owned by Martin, *See People v. White* (1969), 71 Cal.2d 80, 75 Cal.Rptr. 208, 450 P.2d 600, or if the contraband was in plain view, *Mills v. State* (1975), 163 Ind. App. 608, 325 N.E.2d 472, a conviction might be sustained.

NOTE — Reported at 372 N.E.2d 1194.