**Lisa GRAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–1005–CR–223.

Court of Appeals of Indiana.

March 8, 2011.

Transfer Granted June 3, 2011.

John Andrew Goodridge, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. *See* Ind.Code § 35–48–4–11.

## OPINION

KIRSCH, Judge.

Lisa Gray appeals her conviction of possession of marijuana,[1] as a Class A misdemeanor, contending that there is insufficient evidence that she constructively possessed the marijuana.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On September 7, 2008, Officers Robert Pylant and Jasen Clegg of the Evansville Police Department were dispatched to Gray's residence to investigate a complaint of marijuana dealing. After speaking with the officers for a few minutes, Gray signed a written consent to search her apartment.

Upon entering the apartment, the officers noticed two juvenile males sitting in the living room on the couch next to a coffee table. The officers also noticed a small bag of what appeared to be marijuana "in plain view under the coffee table." *Tr.* at 10. Gray and both juveniles denied ownership of the marijuana. Officer Pylant cited Gray for possession of marijuana as a Class A misdemeanor and issued her an "Information and Summons," ordering her to appear in court. *Appellant's App.* at 9.

A bench trial was held in May 2010. At the conclusion of the State's case in chief, Gray moved for judgment on the evidence, contending:

I believe it's a constructive possession case and there ... although the apartment belonged to Miss Gray, there's nothing, uh, in the record to show that she had sole and exclusive control over the area in which the, uh, marijuana was found. And in fact, there's nothing even

to put her near the, uh, coffee table in this case.

*Tr.* at 22. The trial court denied Gray's motion. Following the bench trial, Gray was convicted of Class A misdemeanor possession of marijuana. Gray now appeals. Additional facts will be added as needed.

## DISCUSSION AND DECISION

■ On appeal, Gray claims that the State presented insufficient evidence to support her conviction for possession of marijuana. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Powell v. State,* 912 N.E.2d 853, 864 (Ind.Ct.App.2009). We neither reweigh the evidence nor assess the credibility of witnesses. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless " 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.' " *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

■ The offense of possession of marijuana as a Class A misdemeanor is governed by Indiana Code section 35–48–4–11, which provides, "[a] person who ... knowingly or intentionally possesses (pure or adulterated) marijuana ... commits possession of marijuana ..., a Class A misdemeanor." A conviction for possession of contraband may rest upon proof of either actual or constructive possession. *Washington v. State,* 902 N.E.2d 280, 288 (Ind. Ct.App.2009), *trans. denied.* Actual possession occurs when a person has direct physical control over the item. *Henderson v. State,* 715 N.E.2d 833, 835 (Ind.1999). Because Gray did not have direct physical control over the marijuana found in her apartment, the State had to prove that she had constructive possession of it.

■ " 'A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the *intent* to maintain dominion and control over the drugs and (ii) the *capability* to maintain dominion and control over the drugs.' " *Wilkerson v. State,* 918 N.E.2d 458, 462 (Ind.Ct.App.2009) (emphasis added) (quoting *Gee v. State,* 810 N.E.2d 338, 340 (Ind.2004)). "The capability prong may be satisfied by 'proof of a possessory interest in the premises on which illegal drugs are found....' " *Id.* (quoting *Gee,* 810 N.E.2d at 341). "This is so regardless of whether the possession of the premises is exclusive or not." *Id.* Here, the *capability* prong was satisfied by the evidence that the marijuana was found in Gray's apartment.

■ However, with regard to the *intent* prong of the test, where, as here, "a defendant's possession of the premises upon which contraband is found is not exclusive, 'the inference of intent to maintain dominion and control over the drugs' must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence.' " *Id.* (quoting *Gee,* 810 N.E.2d at 341). Those additional circumstances include:

(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the

contraband with other items owned by the defendant.

*Gee,* 810 N.E.2d at 341 (citing *Henderson,* 715 N.E.2d at 836).

Here, there were no such additional circumstances. The State's entire case consisted of the testimony of Officer Pylant and of Officer Clegg. Officer Pylant testified that the officers went to Gray's home in response to a complaint of possible marijuana dealing. Although Gray met the officers at the door, Officer Pylant testified that he did not know Gray's whereabouts prior to seeing her at the door. *Tr.* at 10–11. Gray, upon learning of the purpose of the visit, "was shocked [and] surprised"; she did not understand "why there would be a narcotics complaint called in." *Id.* at 9. However, after speaking with the officers for about five minutes outside on her porch, Gray signed a written consent for the officers to search her apartment. *Id.* at 10, 13, 16.

The officers entered the living room of Gray's apartment and saw two teenage males, identified as friends of Gray's teenage son, sitting on a couch in front of a coffee table. *Id.* at 15. Officer Pylant testified that he was "not sure if [Gray's] son was downstairs at the time or where he was ... but her son was there, too, I think." *Id.* at 9. He also stated, "right when we walked in, um, we noticed in plain view under the coffee table a small bag of gray leafy substance that later tested positive for THC." *Id.* at 10.

Officer Clegg testified that the marijuana was found under the middle of the coffee table and that the two juvenile males were on the couch right in front of the coffee table. *Id.* at 21. While uncertain as to the type of coffee table, Officer Clegg stated that he thought it was "like a long rectangle kinda [sic] wooden type coffee table." *Id.* at 19.

The record before us contains no evidence that Gray made any incriminating statements or attempted to flee. In fact, Gray came willingly to the door, appeared genuinely shocked when she learned of the reason for the visit, and signed a written consent to permit the officers to search her apartment. Additionally, the officers provided no testimony that the premises were being used to manufacture drugs. The officers testified that the marijuana was found in plain view, under a coffee table that was situated in front of the two juvenile males. However, there was no evidence that Gray was near the marijuana, could see the drugs, or was aware that marijuana was in her home. Finally, there was no testimony that any of Gray's possessions were found in close proximity to the marijuana. The officers only established that marijuana was found in a communal room of Gray's home, under a coffee table, next to which two male visitors were sitting, and that no one declared ownership of the drugs. From this evidence, the State failed to prove beyond a reasonable doubt that Gray constructively possessed the marijuana. *See Chandler v. State,* 816 N.E.2d 464, 467–68 (Ind.Ct.App.2004) (under reasoning set forth in *Gee,* defendant did not have constructive possession of marijuana).

Reversed.

CRONE, J., concurs.

BRADFORD, J., dissents with separate opinion.

BRADFORD, Judge, dissenting.

I cannot agree that the State failed to produce sufficient evidence to establish that Gray constructively possessed the marijuana found in plain view in her apartment. Consequently, I respectfully dissent.

It is well-settled that "conviction for possessory offenses does not depend on the accused being 'caught red-handed' in the act by the police." *See Wilburn v. State,* 442 N.E.2d 1098, 1101 (Ind.1982).

A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. *Lampkins v. State,* 682 N.E.2d 1268, 1275 (Ind.1997), *on reh'g,* 685 N.E.2d 698 (Ind.1997). The proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. *Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind.1984). In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. *See id.; Martin v. State,* 175 Ind.App. 503, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee."). And this is so whether possession of the premises is exclusive or not.

However, the law takes a different view when applying the intent prong of constructive possession. When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence." *Lampkins,* 682 N.E.2d at 1275. The "additional circumstances" have been shown by various means: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State,* 715 N.E.2d 833, 836 (Ind.1999).

*Gee v. State,* 810 N.E.2d 338, 340–41 (Ind. 2004).

With all due respect, I believe that the majority opinion mistakenly reweighs the evidence and fails to view it in the light most favorable to the trial court's judgment. The majority notes that Officer Pylant testified that he did not know where Gray was before she opened the door and uses this evidence to conclude that there is nothing to suggest that she was ever near the marijuana. This conclusion fails to take into account Officer Pylant's and Officer Clegg's testimony that they could see the coffee table under which the marijuana was found through the screen door as they spoke with Gray outside, as well as Officer Pylant's testimony that the coffee table was eight to ten feet from the door. In other words, the evidence most favorable to the judgment indicates quite clearly that Gray was standing only a few feet away from the coffee table when she opened the door and would have had an unobstructed view of the table. My review of the record does not support the majority's conclusion that there is no evidence that Gray was ever in close proximity to the marijuana.

Moreover, there is no indication that the marijuana was placed under the table while Gray was outside; indeed, the evidence most favorable to the judgment indicates exactly the opposite. Both officers

testified that they could see the coffee table the entire time they spoke with Gray and never saw any activity near the table. This evidence, coupled with testimony that the officers noticed the marijuana in plain view immediately upon entering the apartment, leads to a reasonable inference that Gray would have been able to see it just as clearly before she opened the door. In my view, the record contains evidence that is more than sufficient to establish Gray's knowledge of the nature and presence of the contraband in her apartment.

The majority also seems to be treating the non-exhaustive list of "additional circumstances" from *Gee* as though it laid out "elements" of a test or "factors" to be weighed against one another. I believe that the list is nothing more than a compilation of examples of circumstances in which "exists the probability that the presence and character of the contraband was noticed by the defendant." *Carnes v. State*, 480 N.E.2d 581, 586 (Ind.Ct.App. 1985) (case in which list of "additional circumstances" mentioned in *Gee* was first compiled by collecting cases). If the presence of one or more of the listed circumstances (or any other circumstance tending to show knowledge of the nature and presence of the contraband, for that matter) is sufficient to support a finding of constructive possession, it does not follow that the absence of the other listed circumstances undercuts that finding in any way. I do not consider it particularly helpful to Gray's cause, for example, that the marijuana found in Gray's apartment was not found in a manufacturing setting, it was not found intermingled with other personal items, and she did not attempt flight or make any furtive movements or incriminating statements. In another case, perhaps, the absence of some of these circumstances might be more relevant, but not so here. What *is* relevant is that the State produced evidence that Gray was in close proximity to the marijuana and that it was in plain view. In my view, this is more than enough evidence to permit a finding that Gray knew of the presence and character of the contraband.