

**NUMBER 13-06-292-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROBERT PEREZ,**                                                                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                              **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

A jury found appellant, Robert Perez, guilty of the offense of possession with intent to deliver more than 400 grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f) (Vernon 2003). The trial court assessed punishment at fifty years' imprisonment and a $10,000 fine. By two issues, Perez complains (1) the evidence is

legally and factually insufficient to support the jury's verdict and (2) the trial court's sentence was disproportionate to the seriousness of the offense, in violation of his rights under the Eighth and Fourteenth Amendments of the United States Constitution. U.S. CONST. amends. VIII and XIV. We affirm.

Background

On February 21, 2003, Corpus Christi narcotics officer Lonnie Garcia, who was on specialty assignment, received a "tip" that a certain vehicle would be traveling down Ayers Street in Corpus Christi. Garcia contacted police officer Tim Brown, a twenty-two-year police veteran who was working narcotics duty on this specialty assignment, to assist. Approximately thirty minutes later, around 11:00 p.m., as predicted, the two officers saw the vehicle described in the tip, a two-door Cadillac El Dorado, drive down Ayers Street and onto Highway 358,[1] toward Airline Drive. Officer Brown began to follow the vehicle and noticed that it had changed lanes without signaling. The officer then activated his overhead emergency lights to stop the Cadillac. The Cadillac's driver exited the highway and turned into a convenience-store parking lot. Officer Brown approached the car and noticed that there were two people inside: the driver, Miguel Santillana, and a passenger, Perez. When Officer Brown asked Santillana for his driver's license, Santillana handed him a Texas identification card. Santillana told him he had neither a valid Texas driver's license nor insurance on the car. Officer Brown testified that, in situations such as this, his standard procedure was to impound the vehicle.

Officer Brown then called for backup. Perez remained seated in the passenger side of the Cadillac until the backup officers arrived. Shortly thereafter, Corpus Christi police

---

[1]Highway 358 is also known as South Padre Island Drive.

officers Jeremy Guerrero and Robert Larack, a narcotics canine handler, arrived at the scene. The officers placed Santillana and Perez in separate police units while they impounded the car and conducted an inventory. Officer Brown testified that it was normal procedure, when impounding a vehicle, to conduct an inventory of the car. Officer Larack's drug dog alerted to something in the car. The officers then searched the vehicle and found a collapsible ice chest on the floorboard behind the passenger seat with three plastic bags containing a "white powdery substance."[2] Officers also found a metal box, described as a "dope press," on the front seat passenger floorboard, under a white towel. Inside the box was white residue and an anvil weighing about forty-five pounds. Police testimony showed that these items are used to weigh and compress drugs for packaging and sale. Upon confiscating the contraband, police arrested Santillana and Perez for possession of a controlled substance.

Officers Brown and Guerrero transported Santillana and Perez to the Nueces County Jail in their separate units. After booking them, the officers followed their standard policy and checked the back seats of their police units. Officer Guerrero, who transported Perez, found a "smaller bag of white powdery substance" underneath the cushion in the back seat of his car. The total amount of cocaine recovered from the arrest totaled 918.09 grams with a street value of approximately $90,000.

Sufficiency of the Evidence

By his first issue, Perez argues that the evidence is legally and factually insufficient to support the verdict finding him guilty of the offense of possession of cocaine with intent

---

[2] The amount of cocaine found in the collapsible ice chest was later to be determined to be 910.64 grams.

to deliver.  When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light.  *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We will set the verdict aside only if:  (1) the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence.  *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  We cannot conclude a conviction is "clearly wrong" or "manifestly unjust" simply because we would have voted to acquit.  *Watson*, 204 S.W.3d at 417.  In other words, we may not simply substitute our judgment for the fact-finder's judgment.  *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  To reverse for factual sufficiency, we must determine, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.  *Watson*, 204 S.W.3d at 417.  In examining a factual sufficiency challenge, we defer to the fact-finder's determination of the credibility of the evidence.  *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316-19 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319.  The trier of fact is the sole judge of the weight and credibility of the evidence.  *See*

TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Analysis: Affirmative Links

To establish unlawful possession with the intent to deliver a controlled substance, the State must show that a defendant: (1) exercised actual care, custody, control, or management over the controlled substance; (2) knew that he or she possessed a controlled substance; and (3) had the intent to deliver the controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f) (Vernon 2003), § 481.002(38) (Vernon Supp. 2007) *see also Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

Affirmative links are established when the evidence, direct or circumstantial, establishes "the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405-06 (Tex. Crim. App. 2005) (quoting *Brown v. State,* 874 S.W.2d 744, 747 (Tex. Crim. App. 1995)); *see Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). This is the so-called "affirmative links" rule which protects the innocent bystander–a relative, friend, or even a stranger to the actual possessor from conviction merely because of his or her fortuitous proximity to someone else's drugs. *Evans,* 202 S.W.3d at 162. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. *Id.* However,

5

presence or proximity, when combined with other evidence, either direct or circumstantial, may well be sufficient to establish that element beyond a reasonable doubt.  *Id.*  It is not the number of links that is dispositive; rather, it is the logical force of all of the evidence, direct or circumstantial.  *Id*.

The State does not have to show that the accused had exclusive possession of the controlled substance.  *Damron v. State*, 570 S.W.2d 933, 934 (Tex. Crim. App. 1978) (citing *Collini v. State*, 487 S.W.2d 132, 135-36 (Tex. Crim. App. 1972)).  When the accused is not in exclusive possession of the location where the contraband is found, the State must establish additional independent facts and circumstances that affirmatively link the accused in such a manner to conclude that the accused had knowledge of the contraband and exercised control over it.  *Poindexter*, 153 S.W.3d at 406; *Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980).  Affirmative links may be proved by circumstantial evidence, but proof that creates only a strong suspicion or even a probability will not suffice.  *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.–Corpus Christi 2002, pet. ref'd).

Courts have identified a number of factors that may help show an affirmative link to controlled substances.  *See, e.g., Poindexter*, 153 S.W.3d at 406; *Lassaint v. State,* 79 S.W.3d 736, 740 (Tex. App.–Corpus Christi 2002, no pet.); *Jenkins v. State*, 76 S.W.3d 709, 712-13 (Tex. App.-Corpus Christi 2002, pet. ref'd) *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).  The following is a non-exclusive list of factors that have been found to affirmatively link a defendant to contraband:  (1) whether the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or had the right to possess the place where the contraband

6

was found, or was the owner or driver of the automobile in which the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint*, 79 S.W.3d at 741;[3] *Jenkins*, 76 S.W.3d at 712-13.

The court determines whether the evidence is sufficient to affirmatively link the accused to the contraband on a case-by-case basis. *Lassaint*, 79 S.W.3d at 741; *Jenkins*, 76 S.W.3d at 713; *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, pet. ref'd). The "logical force" the factors have is more important than the number of factors present. *Lassaint*, 79 S.W.3d at 741; *Jenkins*, 76 S.W.3d at 713; *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.–Texarkana 1998, pet. ref'd); *Hurtado v. State*, 881 S.W.2d

---

[3]In its opinion in *Evans v. State,* 202 S.W.3d 158, 162 fn.9 (Tex. Crim. App. 2006), the court of criminal appeals noted that it agreed with Justice Womack's concurring opinion, which stated that the "affirmative links" rule is not an independent test of legal sufficiency. The Court noted that "we use that term merely as a shorthand catch-phrase for a large variety of circumstantial evidence that may establish knowing possession, or control, management, or care, of some item such as contraband."

738, 743 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd); *Gilbert,* 874 S.W.2d at 298. The defendant's actions toward the contraband or the police may be considered an affirmative link. *Payne v. State,* 480 S.W.2d 732, 734 (Tex. Crim. App. 1972); *Granados v. State,* 843 S.W.2d 736, 740 (Tex. App.–Corpus Christi 1992, no pet.).

Perez argues that the evidence linking him to the cocaine is both legally and factually insufficient to support the verdict. Applying the standards articulated above, the evidence showed: narcotics officers had received a "tip" regarding the vehicle in which Perez was a passenger; the collapsible ice chest containing the cocaine was found on Perez's side of the car; the "dope press" was found in the floorboard of the passenger seat which Perez occupied; the additional bag of cocaine was found in the back seat of the police unit that only Perez occupied; and the amount of cocaine–918.09 grams, was substantial.

Looking at the evidence surrounding Perez's arrest, and viewing the evidence in the light most favorable to the verdict, his conviction for possession with the intent to deliver is supported by legally and factually sufficient evidence. A rational trier of fact could have examined the physical and testimonial evidence and determined that a defendant who was found in possession of a large amount of cocaine, along with items commonly used to weigh and compress drugs for packaging and sale, was in possession of cocaine with the intent to deliver it. Accordingly, Perez's issue challenging the legal and factual sufficiency of the evidence to support his conviction is overruled.

Proportionality of Sentencing

By issue two, Perez argues that the trial court's sentence was grossly disproportionate to the crime. We note, however, that Perez did not object to the sentence

8

at trial. Additionally, he did not file any post-trial motions or objections complaining that his sentence was either disproportionate to the seriousness of the offense, or complaining about the disparity, cruelty, unusualness or excessiveness of the sentence.

To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The failure to specifically object to an alleged disproportionate sentence in the trial court or in a post-trial motion waives any error for our review. *Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd); *see, e.g., Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (failure to complain to trial court about consecutive sentencing waived error); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (holding that a claim of a grossly disproportionate sentence violative of Eighth Amendment was forfeited by failure to object). Here, Perez neither objected to the alleged disproportionality of the sentence in the trial court, nor raised the issue in a post-trial motion; he is raising it for the first time on appeal. His argument, therefore, is not preserved for review. *See* TEX. R. APP. P. 33.1(a); *Jacoby*, 227 S.W.3d at 130.

Even assuming Perez preserved the complaint, we conclude that his sentence was within the statutorily prescribed punishment range.[4] Perez was convicted of an offense

---

[4]Perez acknowledges that there was no objection to the sentence in the trial court, but cite, *Lovejoy v. Lillie*, 569 S.W.2d 501 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) and *Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177 (Tex. Civ. App.–Houston [14th Dist.] 1975 writ ref'd n.r.e.) 536 S.W.2d 559 (Tex. 1976) as support for his position that the alleged unconstitutionality of the sentence may nevertheless be reviewed. These cases assert that an appellate court may determine the constitutionality of a statute on appeal even if the constitutionality of the statute was not challenged at trial. *Lovejoy*, 569 S.W.2d at 504; *Houston Chronicle Publ'g Co*., 531 S.W.2d at 183. Although we conclude that Perez did not properly object before the trial court, we nevertheless, in the interest of justice, address his complaint. *See also Lister v.*

punishable by confinement for life or for a term of not more than ninety-nine years or less than fifteen years, and a fine not to exceed $250,000. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (f) (Vernon 2003).

Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983) (holding that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel or unusual); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Swinney v. State*, 828 S.W.2d 254, 259 (Tex. App.–Houston [1st Dist.] 1992, no pet.).

Perez asks this Court to apply the *Solem* proportionate analysis test to his sentence. *See Solem v. Helm*, 463 U.S. 277, 291 (1983). This Court has recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991)." *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.–Corpus Christi 2005, pet. ref'd) (citing *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the various opinions issued in *Harmelin*, 501 U.S. at 957, and their impact on the *Solem* decision)); *see Sullivan v. State*, 975 S.W.2d 755, 757-58 (Tex. App.–Corpus Christi 1998, no pet.) (discussing the implications of the *Harmelin* opinion and reviewing the proportionality of appellant's sentence under the *Solem* and *McGruder* tests). Assuming, arguendo, the viability of a proportionality review, as we did in *Sullivan*, we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757-58. In both *Solem* and *McGruder*, we look first at the gravity of the offense and the harshness of the penalty.

---

*State*, No. 13-07-224-CR, 2007 WL 3025180 at *4 (Tex. App.–Corpus Christi October 18, 2007, pet. ref'd) (mem.op.).

10

*Solem*, 463 U.S. at 290; *McGruder*, 954 F.2d at 316.

1. Gravity of the Offense

The gravity of offenses involving drugs is well-established. As noted by Justice Kennedy in *Harmelin,* a case involving the possession of 672 grams of cocaine:

> Petitioner's suggestion that his crime was nonviolent and victimless . . . is false to the point of absurdity. To the contrary, petitioner's crime threatened to cause grave harm to society . . . (after quoting various studies and statistics on the effect of drugs on society). These and other facts and reports detailing the pernicious effects of the drug epidemic in this country . . . demonstrate that the [state] legislature could within reason conclude that the threat posed to the individual and society by possession of this large an amount of cocaine is momentous enough to warrant the deterrence and retribution of a life sentence without parole . . . ." Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances.". . . A rational basis exists for [the state] to conclude that petitioner's crime is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which "no sentence of imprisonment would be disproportionate."

*Harmelin*, 501 U.S. at 1002-04 (internal citations omitted); *see also Acosta v. State*, 160 S.W.2d 204, 212-13 (Tex. App.–Fort Worth 2005, no pet.) ("[P]ossession with intent to deliver cocaine, especially in [large amounts] is a very grave offense. The greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater harm to society.") and *Johnson v. State*, 864 S.W.2d 708, 725 (Tex. App.–Dallas 1993), *aff'd* 912 S.W.2d 227 (Tex. Crim. App. 1993) (affirming a fifty-year sentence for a first-time offender for possession of cocaine, with intent to deliver, holding that "The court was entitled to consider the damage caused to society by drug dealers like [appellant]").

2. Harshness of the Penalty.

Perez was found guilty of possessing with intent to deliver 918 grams of cocaine, a first-degree felony.  The fifty-year sentence is forty-nine years shorter that the maximum sentence–ninety-nine years or life imprisonment.  In light of the nature of Perez's offense and the punishment range available, we conclude that  the sentence is not grossly disproportionate to the crime committed.   This finding ends our analysis under *McGruder*. *See McGruder*, 954 F.2d at 316; *see also Sullivan*, 975 S.W.2d at 757; *Lister v. State*, No. 13-07-224-CR, 2007 WL 3025180 at *4 (Tex. App.–Corpus Christi Oct. 18, 2007, pet. ref'd) (mem. op., not designated for publication).  Because there is no evidence in the appellate record of the sentences imposed for other crimes in Texas or for the same crime in other jurisdictions, we may not perform a comparative evaluation using the remaining *Solem* factors.  *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757-58; *Lister*, 2007 WL 3025180 at *4.  Therefore, we conclude that Perez's sentence is neither grossly disproportionate nor cruel and unusual.  We overrule Perez's second issue, and affirm the trial court's judgment.


Rose Vela
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 6th day of March, 2008.