NUMBER 13-06-292-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ROBERT PEREZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 117th District Court 

of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela



 A jury found appellant, Robert Perez, guilty of the offense of possession with intent
to deliver more than 400 grams of cocaine. See Tex. Health & Safety Code Ann. §
481.112(a), (f) (Vernon 2003). The trial court assessed punishment at fifty years'
imprisonment and a $10,000 fine. By two issues, Perez complains (1) the evidence is
legally and factually insufficient to support the jury's verdict and (2) the trial court's
sentence was disproportionate to the seriousness of the offense, in violation of his rights
under the Eighth and Fourteenth Amendments of the United States Constitution. U.S.
Const. amends. VIII and XIV. We affirm.

Background 

 On February 21, 2003, Corpus Christi narcotics officer Lonnie Garcia, who was on
specialty assignment, received a "tip" that a certain vehicle would be traveling down Ayers
Street in Corpus Christi. Garcia contacted police officer Tim Brown, a twenty-two-year
police veteran who was working narcotics duty on this specialty assignment, to assist. 
Approximately thirty minutes later, around 11:00 p.m., as predicted, the two officers saw
the vehicle described in the tip, a two-door Cadillac El Dorado, drive down Ayers Street and
onto Highway 358, (1) toward Airline Drive. Officer Brown began to follow the vehicle and
noticed that it had changed lanes without signaling. The officer then activated his
overhead emergency lights to stop the Cadillac. The Cadillac's driver exited the highway
and turned into a convenience-store parking lot. Officer Brown approached the car and
noticed that there were two people inside: the driver, Miguel Santillana, and a passenger,
Perez. When Officer Brown asked Santillana for his driver's license, Santillana handed
him a Texas identification card. Santillana told him he had neither a valid Texas driver's
license nor insurance on the car. Officer Brown testified that, in situations such as this, his
standard procedure was to impound the vehicle.

 Officer Brown then called for backup. Perez remained seated in the passenger side
of the Cadillac until the backup officers arrived. Shortly thereafter, Corpus Christi police
officers Jeremy Guerrero and Robert Larack, a narcotics canine handler, arrived at the
scene. The officers placed Santillana and Perez in separate police units while they
impounded the car and conducted an inventory. Officer Brown testified that it was normal
procedure, when impounding a vehicle, to conduct an inventory of the car. Officer Larack's
drug dog alerted to something in the car. The officers then searched the vehicle and found
a collapsible ice chest on the floorboard behind the passenger seat with three plastic bags
containing a "white powdery substance." (2) Officers also found a metal box, described as
a "dope press," on the front seat passenger floorboard, under a white towel. Inside the box
was white residue and an anvil weighing about forty-five pounds. Police testimony showed
that these items are used to weigh and compress drugs for packaging and sale. Upon
confiscating the contraband, police arrested Santillana and Perez for possession of a
controlled substance. 

 Officers Brown and Guerrero transported Santillana and Perez to the Nueces
County Jail in their separate units. After booking them, the officers followed their standard
policy and checked the back seats of their police units. Officer Guerrero, who transported
Perez, found a "smaller bag of white powdery substance" underneath the cushion in the
back seat of his car. The total amount of cocaine recovered from the arrest totaled 918.09
grams with a street value of approximately $90,000. 


 Sufficiency of the Evidence

 By his first issue, Perez argues that the evidence is legally and factually insufficient
to support the verdict finding him guilty of the offense of possession of cocaine with intent
to deliver. When reviewing the factual sufficiency of the evidence, we view all the evidence
in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We will
set the verdict aside only if: (1) the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and
manifestly unjust; or (2) the verdict is against the great weight and preponderance of the
evidence. Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). We cannot conclude a conviction is "clearly wrong" or "manifestly
unjust" simply because we would have voted to acquit. Watson, 204 S.W.3d at 417. In
other words, we may not simply substitute our judgment for the fact-finder's judgment. 
Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
To reverse for factual sufficiency, we must determine, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the verdict. 
Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we defer to the
fact-finder's determination of the credibility of the evidence. Swearingen v. State, 101
S.W.3d 89, 97 (Tex. Crim. App. 2003).

 In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316-19 (1979); Hampton v. State,
165 S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S.
at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our judgment for that
of the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must
resolve any inconsistencies in the evidence in favor of the judgment. Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).

Analysis: Affirmative Links

 To establish unlawful possession with the intent to deliver a controlled substance,
the State must show that a defendant: (1) exercised actual care, custody, control, or
management over the controlled substance; (2) knew that he or she possessed a
controlled substance; and (3) had the intent to deliver the controlled substance. Tex.
Health & Safety Code Ann. § 481.112(a), (f) (Vernon 2003), § 481.002(38) (Vernon Supp.
2007) see also Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). 

 Affirmative links are established when the evidence, direct or circumstantial,
establishes "the accused's connection with the drug was more than just fortuitous." 
Poindexter, 153 S.W.3d at 405-06 (Tex. Crim. App. 2005) (quoting Brown v. State, 874
S.W.2d 744, 747 (Tex. Crim. App. 1995)); see Evans v. State, 202 S.W.3d 158, 161 (Tex.
Crim. App. 2006). This is the so-called "affirmative links" rule which protects the innocent
bystander-a relative, friend, or even a stranger to the actual possessor from conviction
merely because of his or her fortuitous proximity to someone else's drugs. Evans, 202
S.W.3d at 162. Mere presence at the location where drugs are found is thus insufficient,
by itself, to establish actual care, custody, or control of those drugs. Id. However,
presence or proximity, when combined with other evidence, either direct or circumstantial,
may well be sufficient to establish that element beyond a reasonable doubt. Id. It is not
the number of links that is dispositive; rather, it is the logical force of all of the evidence,
direct or circumstantial. Id.

 The State does not have to show that the accused had exclusive possession of the
controlled substance. Damron v. State, 570 S.W.2d 933, 934 (Tex. Crim. App. 1978)
(citing Collini v. State, 487 S.W.2d 132, 135-36 (Tex. Crim. App. 1972)). When the
accused is not in exclusive possession of the location where the contraband is found, the
State must establish additional independent facts and circumstances that affirmatively link
the accused in such a manner to conclude that the accused had knowledge of the
contraband and exercised control over it. Poindexter, 153 S.W.3d at 406; Naquin v. State,
607 S.W.2d 583, 586 (Tex. Crim. App. 1980). Affirmative links may be proved by
circumstantial evidence, but proof that creates only a strong suspicion or even a probability
will not suffice. Jenkins v. State, 76 S.W.3d 709, 712 (Tex. App.-Corpus Christi 2002, pet.
ref'd). 

 Courts have identified a number of factors that may help show an affirmative link to
controlled substances. See, e.g., Poindexter, 153 S.W.3d at 406; Lassaint v. State, 79
S.W.3d 736, 740 (Tex. App.-Corpus Christi 2002, no pet.); Jenkins v. State, 76 S.W.3d
709, 712-13 (Tex. App.-Corpus Christi 2002, pet. ref'd) Gilbert v. State, 874 S.W.2d 290,
298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). The following is a non-exclusive list
of factors that have been found to affirmatively link a defendant to contraband: (1) whether
the contraband was in plain view or recovered from an enclosed place; (2) the accused
was the owner of the premises or had the right to possess the place where the contraband
was found, or was the owner or driver of the automobile in which the contraband was
found; (3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused, or found on the same side of the vehicle as the
accused was sitting; (5) the contraband was found in close proximity to the accused; (6)
a strong residual odor of the contraband was present; (7) the accused possessed other
contraband when arrested; (8) paraphernalia to use the contraband was in view, or found
on the accused; (9) the physical condition of the accused indicated recent consumption of
the contraband in question; (10) conduct by the accused indicated a consciousness of
guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the
accused had a special connection to the contraband; (14) the occupants of the premises
gave conflicting statements about relevant matters; (15) the accused made incriminating
statements connecting himself to the contraband; (16) the quantity of the contraband; and
(17) the accused was observed in a suspicious area under suspicious circumstances. 
Lassaint, 79 S.W.3d at 741; (3) Jenkins, 76 S.W.3d at 712-13.

 The court determines whether the evidence is sufficient to affirmatively link the
accused to the contraband on a case-by-case basis. Lassaint, 79 S.W.3d at 741; Jenkins,
76 S.W.3d at 713; Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.-Austin 1991, pet.
ref'd). The "logical force" the factors have is more important than the number of factors
present. Lassaint, 79 S.W.3d at 741; Jenkins, 76 S.W.3d at 713; Jones v. State, 963
S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd); Hurtado v. State, 881 S.W.2d
738, 743 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd); Gilbert, 874 S.W.2d at 298. The
defendant's actions toward the contraband or the police may be considered an affirmative
link. Payne v. State, 480 S.W.2d 732, 734 (Tex. Crim. App. 1972); Granados v. State, 843
S.W.2d 736, 740 (Tex. App.-Corpus Christi 1992, no pet.).

 Perez argues that the evidence linking him to the cocaine is both legally and
factually insufficient to support the verdict. Applying the standards articulated above, the
evidence showed: narcotics officers had received a "tip" regarding the vehicle in which
Perez was a passenger; the collapsible ice chest containing the cocaine was found on
Perez's side of the car; the "dope press" was found in the floorboard of the passenger seat
which Perez occupied; the additional bag of cocaine was found in the back seat of the
police unit that only Perez occupied; and the amount of cocaine-918.09 grams, was
substantial.

 Looking at the evidence surrounding Perez's arrest, and viewing the evidence in the
light most favorable to the verdict, his conviction for possession with the intent to deliver
is supported by legally and factually sufficient evidence. A rational trier of fact could have
examined the physical and testimonial evidence and determined that a defendant who was
found in possession of a large amount of cocaine, along with items commonly used to
weigh and compress drugs for packaging and sale, was in possession of cocaine with the
intent to deliver it. Accordingly, Perez's issue challenging the legal and factual sufficiency
of the evidence to support his conviction is overruled.

Proportionality of Sentencing

 By issue two, Perez argues that the trial court's sentence was grossly
disproportionate to the crime. We note, however, that Perez did not object to the sentence
at trial. Additionally, he did not file any post-trial motions or objections complaining that his
sentence was either disproportionate to the seriousness of the offense, or complaining
about the disparity, cruelty, unusualness or excessiveness of the sentence. 

 To preserve error for appellate review, a party must present a timely objection to the
trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P.
33.1(a); Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The failure to
specifically object to an alleged disproportionate sentence in the trial court or in a post-trial
motion waives any error for our review. Jacoby v. State, 227 S.W.3d 128, 130 (Tex.
App.-Houston [1st Dist.] 2006, pet. ref'd); see, e.g., Nicholas v. State, 56 S.W.3d 760, 768
(Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (failure to complain to trial court about
consecutive sentencing waived error); Solis v. State, 945 S.W.2d 300, 301 (Tex.
App.-Houston [1st Dist.] 1997, pet. ref'd) (holding that a claim of a grossly disproportionate
sentence violative of Eighth Amendment was forfeited by failure to object). Here, Perez
neither objected to the alleged disproportionality of the sentence in the trial court, nor
raised the issue in a post-trial motion; he is raising it for the first time on appeal. His
argument, therefore, is not preserved for review. See Tex. R. App. P. 33.1(a); Jacoby, 227
S.W.3d at 130.

 Even assuming Perez preserved the complaint, we conclude that his sentence was
within the statutorily prescribed punishment range. (4) Perez was convicted of an offense
punishable by confinement for life or for a term of not more than ninety-nine years or less
than fifteen years, and a fine not to exceed $250,000. Tex. Health & Safety Code Ann.
§ 481.112 (f) (Vernon 2003).

 Punishment assessed within the statutory limits is generally not cruel and unusual
punishment. Harris v. State, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983) (holding that
punishment which falls within the limits prescribed by a valid statute is not excessive, cruel
or unusual); Samuel v. State, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); Swinney v.
State, 828 S.W.2d 254, 259 (Tex. App.-Houston [1st Dist.] 1992, no pet.).

 Perez asks this Court to apply the Solem proportionate analysis test to his sentence.
 See Solem v. Helm, 463 U.S. 277, 291 (1983). This Court has recognized that "the
viability and mode of application of proportionate analysis . . . has been questioned since
the Supreme Court's decision in Harmelin v. Michigan, 501 U.S. 957 (1991)." Trevino v.
State, 174 S.W.3d 925, 928 (Tex. App.-Corpus Christi 2005, pet. ref'd) (citing McGruder
v. Puckett, 954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the various opinions issued
in Harmelin, 501 U.S. at 957, and their impact on the Solem decision)); see Sullivan v.
State, 975 S.W.2d 755, 757-58 (Tex. App.-Corpus Christi 1998, no pet.) (discussing the
implications of the Harmelin opinion and reviewing the proportionality of appellant's
sentence under the Solem and McGruder tests). Assuming, arguendo, the viability of a
proportionality review, as we did in Sullivan, we will apply both the Solem and McGruder
tests to the facts of this case. See Sullivan, 975 S.W.2d at 757-58. In both Solem and
McGruder, we look first at the gravity of the offense and the harshness of the penalty. 
Solem, 463 U.S. at 290; McGruder, 954 F.2d at 316. 


1. Gravity of the Offense 

 The gravity of offenses involving drugs is well-established. As noted by Justice
Kennedy in Harmelin, a case involving the possession of 672 grams of cocaine:

 Petitioner's suggestion that his crime was nonviolent and victimless . . . is
false to the point of absurdity. To the contrary, petitioner's crime threatened
to cause grave harm to society . . . (after quoting various studies and
statistics on the effect of drugs on society). These and other facts and
reports detailing the pernicious effects of the drug epidemic in this country
. . . demonstrate that the [state] legislature could within reason conclude that
the threat posed to the individual and society by possession of this large an
amount of cocaine is momentous enough to warrant the deterrence and
retribution of a life sentence without parole . . . ." Few problems affecting the
health and welfare of our population, particularly our young, cause greater
concern than the escalating use of controlled substances.". . . A rational
basis exists for [the state] to conclude that petitioner's crime is as serious
and violent as the crime of felony murder without specific intent to kill, a
crime for which "no sentence of imprisonment would be disproportionate."


Harmelin, 501 U.S. at 1002-04 (internal citations omitted); see also Acosta v. State, 160
S.W.2d 204, 212-13 (Tex. App.-Fort Worth 2005, no pet.) ("[P]ossession with intent to
deliver cocaine, especially in [large amounts] is a very grave offense. The greater the
amount of illicit drugs possessed, the more likely use is widespread and delivery to others
is intended, and the greater harm to society.") and Johnson v. State, 864 S.W.2d 708, 725
(Tex. App.-Dallas 1993), aff'd 912 S.W.2d 227 (Tex. Crim. App. 1993) (affirming a fifty-year sentence for a first-time offender for possession of cocaine, with intent to deliver,
holding that "The court was entitled to consider the damage caused to society by drug
dealers like [appellant]").



2. Harshness of the Penalty.

 Perez was found guilty of possessing with intent to deliver 918 grams of cocaine,
a first-degree felony. The fifty-year sentence is forty-nine years shorter that the maximum
sentence-ninety-nine years or life imprisonment. In light of the nature of Perez's offense
and the punishment range available, we conclude that the sentence is not grossly
disproportionate to the crime committed. This finding ends our analysis under McGruder. 
See McGruder, 954 F.2d at 316; see also Sullivan, 975 S.W.2d at 757; Lister v. State, No.
13-07-224-CR, 2007 WL 3025180 at *4 (Tex. App.-Corpus Christi Oct. 18, 2007, pet. ref'd)
(mem. op., not designated for publication). Because there is no evidence in the appellate
record of the sentences imposed for other crimes in Texas or for the same crime in other
jurisdictions, we may not perform a comparative evaluation using the remaining Solem
factors. See Solem, 463 U.S. at 292; see also Sullivan, 975 S.W.2d at 757-58; Lister,
2007 WL 3025180 at *4. Therefore, we conclude that Perez's sentence is neither grossly
disproportionate nor cruel and unusual. We overrule Perez's second issue, and affirm the
trial court's judgment.

 


 Rose Vela 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 6th day of March, 2008.
1. Highway 358 is also known as South Padre Island Drive.
2. The amount of cocaine found in the collapsible ice chest was later to be determined to be 910.64
grams.
3. In its opinion in Evans v. State, 202 S.W.3d 158, 162 fn.9 (Tex. Crim. App. 2006), the court of
criminal appeals noted that it agreed with Justice Womack's concurring opinion, which stated that the
"affirmative links" rule is not an independent test of legal sufficiency. The Court noted that "we use that term
merely as a shorthand catch-phrase for a large variety of circumstantial evidence that may establish knowing
possession, or control, management, or care, of some item such as contraband." 
4. Perez acknowledges that there was no objection to the sentence in the trial court, but cite, Lovejoy
v. Lillie, 569 S.W.2d 501 (Tex. Civ. App.-Tyler 1978, writ ref'd n.r.e.) and Houston Chronicle Publ'g Co. v. City
of Houston, 531 S.W.2d 177 (Tex. Civ. App.-Houston [14th Dist.] 1975 writ ref'd n.r.e.) 536 S.W.2d 559 (Tex.
1976) as support for his position that the alleged unconstitutionality of the sentence may nevertheless be
reviewed. These cases assert that an appellate court may determine the constitutionality of a statute on
appeal even if the constitutionality of the statute was not challenged at trial. Lovejoy, 569 S.W.2d at 504;
Houston Chronicle Publ'g Co., 531 S.W.2d at 183. Although we conclude that Perez did not properly object
before the trial court, we nevertheless, in the interest of justice, address his complaint. See also Lister v.
State, No. 13-07-224-CR, 2007 WL 3025180 at *4 (Tex. App.-Corpus Christi October 18, 2007, pet. ref'd)
(mem.op.).