J-S89042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TYLEESIA KITCHEN | |
| Appellant | No. 148 EDA 2016 |

Appeal from the Judgment of Sentence December 9, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0006204-2015

BEFORE: SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED January 12, 2017**

Appellant, Tyleesia Kitchen, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. She contends the evidence was insufficient to convict her of false identification to a law enforcement officer[1] and possession with intent to deliver.[2] We affirm.

We adopt the facts and procedural history set forth by the trial court's opinion. **See** Trial Ct. Op., 6/15/16, at 1-8. Appellant argues that the evidence was insufficient to convict her of false identification to law enforcement because the police officers did not inform her that she was the subject of an official investigation. She avers that "because she did not know she was the subject of an official investigation, it was not illegal for her

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 4914(a).

[2] 35 P.S. § 780-113(a)(30).

to provide the officer with a fake name when she did." Appellant's Brief at 13. Appellant also claims "the evidence was not sufficient to prove beyond a reasonable doubt that [she] constructively possessed the drugs hidden in the car, and the trial court erred in convicting her of these possessory drug offenses."[3] *Id.* at 18.

---

[3] We note that Appellant raised the following issues in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal, reproduced verbatim:

> a. The trial court erred in convicting [A]ppellant of false identification to law enforcement as the Commonwealth introduced no evidence that the police informed [A]ppellant she was the suspect of an official investigation and the Commonwealth neglected, at trial, to introduce evidence that [A]ppellant presented false identification to police.
>
> b. The trial court erred in convicting [A]ppellant of possession with intent to deliver as the Commonwealth failed to demonstrate that [A]ppellant had constructive possession over the packets of crack cocaine in the trunk of the car and in the enclosed soda can.
>
> c. The trial court erred in convicting [A]ppellant of knowing and intentional possession of crack cocaine where the Commonwealth failed to demonstrate that [A]ppellant knowingly and intentionally possessed the packets of crack cocaine found in the car.

Statement of Errors Complained of on Appeal, Appellant's Brief at Ex. "A."

Appellant did not raise issue "c" in her brief and therefore it is abandoned on appeal. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 n. 2 (Pa. Super. 2011) (holding claims raised in Rule 1925(b) statement but not identified in statement of questions presented or developed in argument section of brief are abandoned on appeal).

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> As this case involves a question of law, our scope of review is plenary. Our standard of review is de novo.

> *        *        *

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .

> *        *        *

> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235-1237 (Pa. 2007). (citations and quotation marks omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Caban***, 60 A.3d 120, 132 (Pa. Super. 2012) (citation omitted).

This Court has stated that

> [c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We

J-S89042-16

> subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citations omitted). "[C]ircumstantial evidence may be used to establish constructive possession of the illegal substance." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted).

After careful review of the record, the parties' briefs, and the decision by the Honorable Sierra Thomas Street, we affirm on the basis of the trial court's opinion. *See* Trial Ct. Op. at 8-15. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017

- 4 -

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :    CP-51-CR-0006204-2015

          :

v.      CP-51-CR-0006204-2015 Comm. v. Kitchen, Tyleesia
Opinion



7460289201

TYLEESIA KITCHEN

**FILED**

**SUPERIOR COURT**    JUN 1 5 2016
**NO. 148 EDA 2016**    Criminal Appeals Unit
First Judicial District of PA

## OPINION

THOMAS STREET, J.                     June 15, 2016

## I.    OVERVIEW AND PROCEDURAL HISTORY

The Defendant, Tyleesia Kitchen, was arrested and charged with *inter alia* Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver (F);[1] Intentional Possession of a Controlled Substance by a Person Not Regulated (M);[2] and False Identification to a Law Enforcement Officer (M3).[3] On August 4, 2015, the Defendant filed an omnibus pre-trial motion. On October 7, 2015, this court denied the Defendant's Motion to Suppress physical evidence. On the same day, a non-jury trial[4] was held at which the Defendant was found guilty of the above charges. A pre-sentence investigation was ordered.

On December 9, 2015, this court denied the Defendant's oral Motion for Extraordinary Relief. On the same day, the Defendant was sentenced to six (6) to twenty-three (23) months of incarceration with twenty-four (24) months of reporting probation. Mandatory court costs were also imposed.

---

[1] 35 Pa.C.S. § 780-113 §§ A30
[2] 35 Pa.C.S. § 780-113 §§ A16
[3] 18 Pa.C.S. § 4914 §§ A
[4] Following the suppression hearing, all relevant non-hearsay testimony was incorporated into the record.

On January 5, 2016, the Defendant filed a Notice of Appeal. On February 5, 2016, after notes of testimony became available, this court ordered the Defendant to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days pursuant to Pa. R.A.P. 1925(b). A Concise Statement of Matters Complained of on Appeal was filed on February 25, 2016.

## II.  FACTUAL HISTORY

Philadelphia Police Officer Thomas Dempsey, assigned to the 35th District, testified that on June 2, 2015, at approximately 3:00 a.m., he performed his tour of duty in the 5531 North 5th Street area of the city of Philadelphia. (N.T. 10/7/15 p. 6).[5] Officer Dempsey stated that he was traveling northbound on 5th Street in a patrol car with his partner, Officer Hanton, approaching Duncannon when he came into contact with the Defendant operating a white Nissan Altima with New York tag GSD4632. (N.T. 10/7/15 p. 7). He observed the Defendant head westbound on Duncannon at 5th Street and then make a right-hand turn onto 5th Street, heading northbound, without using a turn signal. *Id.* Officer Dempsey activated his lights and sirens and pulled the Defendant over approximately three to four (3-4) blocks up at 5531 North 5th Street for failing to signal on the turn. *Id.* Officer Dempsey stated that he then approached the driver's side of the vehicle and that the Defendant was the only person in the vehicle. (N.T. 10/7/15 pp. 7-8).

Officer Dempsey testified that he asked the Defendant for her license, registration, and insurance. (N.T. 10/7/15 p. 8). The Defendant was unable to provide any form of identification and notified Officer Dempsey that the car was rented. *Id.* The Defendant could not produce any documents to prove a rental agreement. *Id.* Subsequent to failing to give Officer Dempsey any of the requested identification, the Defendant gave him the name of "Chelsea Thomas" with a

---

[5] References to the record refer to the suppression hearing and non-jury trial recorded on October 7, 2015.

2

date of birth of 12/21/90. *Id.* The Defendant provided Officer Dempsey with a TD Bank credit card with the name "Chelsea Thomas" and a social security number. (N.T. 10/7/15 p. 8). Officer Dempsey stated that from his investigation, the name "Chelsea Thomas" came back with a suspended license. *Id.* Officer Dempsey stated that he and his partner then decided to live stop the vehicle for the suspended license. *Id.* Officer Dempsey testified that he and his partner followed procedure: they notified the Parking Authority, removed the Defendant from the vehicle, and performed a search incident to the live stop of the vehicle to "make sure there was [*sic*] no dangerous things in the vehicle and to inventory anything of the driver, money that was there, whatever was valuable, just to cover all of my bases." (N.T. 10/7/15 pp. 8-9).

Officer Dempsey testified that upon searching the vehicle pursuant to the live stop, he noticed a 12-ounce green can of Mountain Dew in the driver's seat cup holder, which he testified caught his eye because it was larger than usual, looked swollen, and there was no condensation. (N.T. 10/7/15 pp. 9, 16). Officer Dempsey testified that he possesses ample experience discovering narcotics hidden inside soda cans; during his years on the force, he has uncovered approximately fifteen (15) to twenty (20) false cans, most of them soda cans, and only one of them was empty and did not contain narcotics. (N.T. 10/7/15 pp. 9, 15-16). From this experience, Officer Dempsey stated that he has made several narcotics arrests where narcotics were hidden in false cans. (N.T. 10/7/15 p. 9).

Officer Dempsey testified that he touched the can and felt that it was rock hard which further indicated from his experience that this was a false can. *Id.* Officer Dempsey proceeded to pick up the can and to unscrew the top, which revealed that the can was indeed false; inside the can were seventy-six (76) small baggies with an off-white chunky substance, crack cocaine. (N.T. 10/7/15 p. 9). Officer Dempsey stated that he arrested the Defendant and placed her in the

3

back of his vehicle. *Id.* He continued his search of the vehicle pursuant to live stop procedure and discovered a driver's license with a different name under the brake pedal on the driver's side floor area. (N.T. 10/7/15 pp. 9-11). Officer Dempsey ran the discovered driver's license through the system to find that name also had a suspended license. (N.T. 10/7/15 p. 11).

Officer Dempsey testified that he continued with the live stop and completing paperwork when Officer Snell arrived as backup. (N.T. 10/7/15 p. 11). Officer Snell completed an inventory search of the trunk of the Defendant's vehicle in Officer Dempsey's presence. *Id.* Upon opening the trunk, Officer Dempsey observed a clear sandwich bag with eight-four (84) zip tie baggies with crack cocaine, an off –white chunky substance inside them. *Id.* Officer Dempsey stated that in total he recovered one hundred and sixty (160) baggies of crack cocaine later placed on Property Receipt No. 31976333. *Id.* The false Mountain Dew can was placed on Property Receipt No. 3197634. (N.T. 10/7/15 p. 12). A search incident to arrest recovered one hundred and forty-five dollars ($145) in US currency from the Defendant's front pants pocket later placed on Property Receipt No. 3197635. *Id.* Officer Dempsey stated that the vehicle was live stopped and the Defendant transported to the 35th District for processing. *Id.*

Officer Dempsey testified that the identification was found on the driver's side floor area under the brake pedal. (N.T. 10/7/15 p. 12). Officer Dempsey stated that the name of the driver's license was the Defendant's, Tyleesia Kitchen, and had a date of birth of 7/10/90 with a picture matching what the Defendant looked like on the day in question. (N.T. 10/17/15 p. 14). Officer Dempsey stated that this information was inconsistent with the information provided by the Defendant when he first asked her for her identification. *Id.* He explained that the Defendant first gave him the name "Chelsea Thomas" which, through further investigation, he believed to

4

be the Defendant's girlfriend. *Id.* Officer Dempsey restated that he determined that both "Tyleesia Kitchen" and "Chelsea Thomas" did not have valid licenses. (N.T. 10/7/15 pp. 14-15).

Officer Dempsey further testified that in his nine years on the job he has seen fifteen to twenty (15-20) false cans. (N.T. 10/7/15 p. 15). Officer Dempsey stated that most of these cans are soda cans and that he has also observed "Fix-A-Flat cans, a Pringles can, but the majority are soda cans." (N.T. 10/7/15 pp. 15-16). Officer Dempsey stated that he has found narcotics in these false cans fourteen (14) out of fifteen (15) times, specifying only one occasion where a false can was empty. (N.T. 10/7/15 p. 16). Officer Dempsey testified that the can in the instant case caught his eye before he touched it. *Id.* He stated, "[i]t looked like it was swelled up. There was no water dripping off of it as if it was cold. It was swelled-up looking and that caught my eye and that's why I touched it. I immediately felt it was rock hard." (N.T. 10/7/15 p. 16).

When asked to describe the area where the Defendant's vehicle was stopped, Officer Dempsey testified that it was at 5th and Olney where the Defendant pulled over to the right, placing her vehicle only partially in a parking spot. (N.T. 10/7/15 p. 16). Officer Dempsey stated that the Defendant's vehicle was interfering with traffic as half of the Defendant's vehicle was sticking out in the north bound lane causing cars to have to go partly in the southbound lane to get past her. (N.T. 10/7/15 p. 17). Officer Dempsey described the area as heavily populated and busy. *Id.* Officer Dempsey stated that this area is well-known by police to be a common site for loud music, narcotics calls and arrests. (N.T. 10/7/15 p. 17).

On cross-examination, Officer Dempsey affirmed that the Defendant's car had New York plates and that it was rented. (N.T. 10/7/15 p. 18). The Defendant told Officer Dempsey that "Chelsea rented it." (N.T. 10/7/15 p. 18). Because the Defendant did not refer to herself in the first person, Officer Dempsey stated "that was one of the things that stuck out because either she

5

was talking about herself in the third person or she just messed up." *Id.* When asked to review the notes of testimony from the preliminary hearing, marked as Defense Exhibit 1 (D-1), Officer Dempsey affirmed that he stated that there were no cars parked on 5th Street, there were plenty of spots, and that the Defendant had pulled over in a legal parking spot. (N.T. 10/7/15 p. 21). Officer Dempsey further affirmed that he answered in the affirmative at the preliminary hearing when asked if it was not until he had removed the Defendant from the vehicle and actually picked up the can that he realized it was a false can. (N.T. 10/7/15 p. 22).

Officer Dempsey testified that after he determined that Chelsea Thomas had a suspended license, he removed the Defendant from the car and placed her in the police car, un-handcuffed and shut the police car door. (N.T. 10/7/15 p. 23). Officer Dempsey affirmed that he began the inventory search of the vehicle once he verified that the Defendant had a suspended license. (N.T. 10/7/15 p. 24). Officer Dempsey explained that he believed the Defendant to be "Chelsea Thomas" because she provided that name and the social security number. *Id.*

On redirect examination, Officer Dempsey testified that he suspected that the can contained narcotics, but was not certain until he physically opened it. (N.T. 10/7/15 p. 25).

Philadelphia Police Officer James Trappler, assigned to the Narcotics Field Unit, testified that he reviewed the file in the present case and had the opportunity to hear the testimony. (N.T. 10/7/15 p. 50). Officer Trappler testified that based on his experience there was intent to deliver in the present case. (N.T. 10/7/15 pp. 50-51). Officer Trappler explained that the one-hundred and sixty (160) packets of cocaine base, with a weight of 9.971 grams would total a street value of $800. (N.T. 10/7/15 p. 51). Additionally, in relation to the recovered $145 US currency, Officer Trappler stated, "the reason you have drugs to sell is to make money so at some point there will be US currency. *Id.*

6

Officer Trappler testified that, in regards to the lack of use paraphernalia, in his experience "when somebody is heavily addicted to crack cocaine, they tend to get it and smoke it right away." (N.T. 10/7/15 p. 52). He stated that he has not heard of a user who personally uses such a large quantity of cocaine. *Id.* He explained that when there is such a large amount recovered, the user is always a seller as well. *Id.* Officer Trappler additionally noted that individuals who are just users virtually always buy just enough so that they can smoke it immediately. *Id.*

Furthermore, Officer Trappler testified that in his experience the Mountain Dew can with the false bottom was indicative of a seller: that the can's purpose is to conceal narcotics and also to hold cash from narcotic sale transactions. (N.T. 10/7/15 p. 53). Officer Trappler testified that if a person were just a user, it would be non-sensible and uneconomical to purchase one-hundred and sixty (160) packets. *Id.* In other words, if someone is a heavy user, it would be much more practical to buy in bulk and double the product for the same amount of money spent instead of purchasing one-hundred and sixty (160) individual packets. *Id.*

Moreover, Officer Trappler testified that because seventy-six (76) packets of cocaine were recovered from the front of the vehicle and eighty-four (84) packets from the back, it is indicative of a person who is attempting to reduce the severity of their guilty conduct by separating the product; users and sellers oftentimes believe that if the drugs are not near them, they will not be found guilty. (N.T. 10/7/15 pp. 53-54).

On cross-examination, Officer Trappler testified that finding one-hundred and forty-five ($145) dollars on the Defendant is consistent with a drug sale or purchase for when there is a transaction, it follows there will be currency. (N.T. 10/7/15 p. 54). Officer Trappler concluded

7

based on his expert opinion that whoever possessed such a quantity of cocaine possessed them with the intent to deliver. *Id.*

## III.  ISSUES

In the Pa. R.A.P. 1925(b) Statement of Matters Complained of on Appeal, the Defendant identifies the following issues:

1. The trial court erred in convicting appellant of false identification to law enforcement as the Commonwealth introduced no evidence that the police informed appellant she was the suspect of an official investigation and the Commonwealth neglected, at trial, to introduce evidence that appellant presented false identification to police.

2. The trial court erred in convicting appellant of possession with intent to deliver as the Commonwealth failed to demonstrate that appellant had constructive possession over the packets of crack cocaine in the trunk of the car and in the enclosed soda can.

3. The trial court erred in convicting appellant of knowing and intentional possession of crack cocaine where the Commonwealth failed to demonstrate that appellant knowingly and intentionally possessed the packets of crack cocaine found in the car.

## IV.  STANDARD OF REVIEW

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 2006 PA Super 86, 11, 899 A.2d 1126, 1131 (2006) (citing *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). The role of an appellate court in reviewing the weight of the evidence is very limited. *Commonwealth v. Holmes*, 444 Pa. Super. 257, 264, 663 A.2d 771, 774 (1995). When reviewing a sufficiency of the evidence claim, a court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt. *Commonwealth v.*

8

*Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992); *Commonwealth v. Marks,* 704 A.2d 1095 (Pa. Super. 1997).

A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams,* 2005 Pa. Super. 296, 882 A.2d. 496, 498-99 (Pa. Super. 2005). An appellate court may reverse a lower court's verdict only in the instance that it is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Hunzer,* 868 A.2d 498, 506-507 (Pa.Super.2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Commonwealth v. Petteway,* 847 A.2d 713, 716 (Pa. Super. 2004) (citing *Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa. Super. 2002)).

Additionally, the Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *See Commonwealth v. Adams,* 2005 Pa. Super 296, 882 A.2d. 496, 499 (Pa. Super 2005); *see also Commonwealth v. Murphy,* 2002 PA Super 84, 795 A.2d 1025, 1038-39 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). "If the record contains support for the verdict, it may not be disturbed." *Adams,* 882 A.2d. at 499.

## V.    DISCUSSION

In her first issue on appeal, the Defendant argues that this court erred in convicting her of false identification because the Commonwealth failed to introduce evidence that police informed

9

the Defendant she was the suspect of an official investigation and failed to introduce evidence that she presented false identification to police. This court disagrees.

A person commits false identification if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law. 18 Pa.C.S.A. § 4914 (2001). Three conditions must be satisfied before a defendant can be convicted of presenting false identification to law enforcement. *Id.* First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer; second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law; and third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law. *In re D.S.*, 39 A.3d 968, 974 (Pa. 2012). Moreover, it can be inferred from the surrounding circumstances of a traffic stop that an official investigation is underway. *Commonwealth v. Barnes*, 14 A.3d 128, 131 (Pa. Super. 2011).

In *Commonwealth v. Barnes,* police initiated a traffic stop of the defendant's car because the vehicle had multiple air fresheners hanging from the rear view mirror, in violation of 75 Pa. C.S.A. § 4524(c). *Barnes,* 14 A.3d at 129. Because the defendant was in a high crime neighborhood and for safety purposes, the officer asked the defendant for identification, to which the defendant responded by giving a name and date of birth. *Id.* After the officer completed a computer check of the name and date of birth, no record was found. *Id.* The defendant's true identity was inconsistent with the information provided; the defendant was charged with presenting false identification to law enforcement. *Id.* The Pennsylvania Superior Court held

10

that while the first condition of false identification was satisfied because the officer was in uniform, the second and third conditions were not. *Id.* Because the officer stated his official investigation of a violation of law started after false identification was provided, the defendant cannot be convicted of the presentment of false identification. *Id.* at 132. The Court reasoned that while the defendant was not found guilty of presenting false identification, the surrounding circumstances of a traffic stop, such as a traffic violation, coupled with being in a high crime area can be sufficient grounds to demonstrate that the defendant knew it was an official stop and an investigation of a violation of law. *Id.* at 131.

Here, the evidence is sufficient to find the Defendant guilty of false identification. First, Officer Dempsey was in uniform when he approached the Defendant's car, so his identity as a police officer was established. (N.T. 10/7/15 pp. 6-7). Second, from the surrounding circumstances of the traffic stop it is inferred that an official investigation of a violation of law was underway. Unlike *Barnes*, Officer Dempsey's official investigation of a violation of law began before the Defendant provided a false name. (N.T. 10/7/15 p. 7). Similar to *Barnes*, Officer Dempsey pulled the Defendant over because of a traffic violation; further, also similar to *Barnes*, the neighborhood of 5th and Olney where the Defendant was pulled over was a high crime area. (N.T. 10/7/15 p. 17). Officer Dempsey stated that this area is well-known by police to be a common site for loud music, narcotics calls and arrests. *Id.* Thus, Officer Dempsey's traffic stop with its surrounding circumstances implied there was an official investigation of a violation of law prior to the presentment of false identification. Third, the Defendant presented false information by providing Chelsea Thomas' name, social security number, and credit card during the course of a traffic stop. Hence, this court properly found that there was sufficient evidence to find the Defendant guilty of presenting false identification to law enforcement.

11

In her second issue on appeal, the Defendant argues that this court erred in convicting the Defendant of Possession with Intent to Deliver because the Commonwealth failed to demonstrate that the Defendant had constructive possession over the packets of crack cocaine in the trunk of the car and the enclosed soda can. This court disagrees.

Possession with Intent to Manufacture or Deliver a Controlled Substance is statutorily defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa.C.S. § 780–113(a)(30).

To find the defendant guilty of Possession with Intent to Manufacture or Deliver a Controlled Substance, the Commonwealth must prove beyond a reasonable doubt that the defendant both possessed the controlled substance and that he had the intent to deliver. *Commonwealth v. Kirkland,* 831 A.2d 607, 611 (Pa. Super. 2003) citing *Commonwealth v. Conaway,* 791 A.2d 359 (Pa. Super. 2002); *Commonwealth v. Aguado,* 760 A.2d 1181 (Pa. Super. 2000). The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. *Id.* Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Id.*

When the controlled substance is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had

12

constructive possession of the drug. *Commonwealth v. Vargas*, 108 A. 3d 858, 867 (Pa. Super. 2014) citing *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132, 134 (1983). Constructive possession is demonstrated by "the ability to exercise a conscious dominion over the illegal substance: the power to control the illegal substance and the intent to exercise that control. *Id.* An intent to maintain a conscious dominion may be inferred from the totality of the circumstances. *Id.* Circumstantial evidence may be used to establish constructive possession of the illegal substance. *Id.* Furthermore, although not dispositive, a defendant's presence at the location where drugs are discovered is a factor in establishing knowledge that contraband is present and her exercise of dominion and control over the same. *Commonwealth v. Aviles*, 615 A.2d 398, 403 (Pa. Super. 1992) citing *Commonwealth v. Harris*, 263 A.2d 397, 424 (Pa. Super. 1979). Moreover, when a police officer finds cocaine within the defendant's rental car, not on his person, it is sufficient to establish constructive possession and find the defendant guilty of Possession with the Intent to Deliver. *Commonwealth v. Jones* 874 A.2d 108, 122 (Pa. Super. 2005).

In *Commonwealth v. Jones*, the police found cocaine in the cabin of the defendant's rental car after the defendant was removed from the car and a search ensued. *Jones,* 874 A.2d. at 122. The officer later discovered cocaine in the same area. *Id.* The officer also recovered four hundred and eighty-one ($481) dollars in small denominations, which the court stated was common for someone involved in a drug distribution scheme. *Id.* The court held that based on the totality of the circumstances, the defendant had conscious dominion over the cocaine and that constructive possession was present; thus, the defendant was found guilty of possession. *Id.* The Court reasoned that the defendant's close proximity to the cocaine by driving the car and small

13

denominations of money was enough evidence to establish constructive possession and find the defendant guilty of Possession with the Intent to Deliver. *Id.*

Here, the evidence supports the Defendant's conviction of Possession with the Intent to Deliver and to establish constructive possession of the narcotics in the trunk of the car and the enclosed soda can because of the Defendant's close proximity to the cocaine and the presence of US currency. Similar to *Jones*, the police found the cocaine within the Defendant's rental car shortly after commencing a search. Similar to *Jones*, the Defendant was in close proximity to the narcotics found because she drove the vehicle. Officer Dempsey decided to search the Mountain Dew can based on his nine (9) years of experience on the job viewing fifteen to twenty (15-20) false cans, a majority of which were soda cans. (N.T. 10/7/15 pp. 15-16). He stated further that he has found narcotics in these false cans fourteen (14) out of fifteen (15) times, specifying only one occasion where a false can was empty. (N.T. 10/7/15 p. 16). Also similar to *Jones*, Officer Dempsey's search incident to the arrest revealed that the Defendant was in possession of a relatively large sum of money, one hundred and forty-five dollars ($145) on her person. (N.T. 10/7/15 p. 12).

Moreover, this court also relied on the expert testimony of Philadelphia Police Officer James Trappler, assigned to the Narcotics Field Unit. Officer Trappler testified that based on his experience there was intent to deliver in the present case. (N.T. 10/7/15 pp. 50-51). Officer Trappler explained that the one-hundred and sixty (160) packets of cocaine base, with a weight of 9.971 grams would total a street value of $800. (N.T. 10/7/15 p. 51). He noted that the Mountain Dew with a false bottom indicated an intent to perform a narcotics transaction because the can's purpose is to conceal narcotics and cash. (N.T. 10/7/15 p. 53). Additionally, in relation to the recovered one hundred and forty-five dollars ($145), Officer Trappler stated, "the

14

reason you have drugs to sell is to make money so at some point there will be US currency. (N.T. 10/7/15 p. 54). Further, Officer Trappler noted that because seventy-six (76) packets of cocaine were recovered from the front of the vehicle and eighty-four (84) packets from the back, it is indicative of a person who is attempting to reduce the severity of their guilty conduct by separating the product; users and sellers oftentimes believe that if the drugs are not near them, they will not be found guilty. (N.T. 10/7/15 pp. 53-54).

Based on the totality of these circumstances, circumstantial evidence demonstrates that the Defendant had the power to control the illegal substance and the intent to exercise that control. Therefore, this court properly found the Defendant guilty of Possession with Intent to Deliver as she constructively possessed the packets of crack cocaine in the trunk of the vehicle and in the enclosed soda can located due to her proximity to the narcotics and her position as the operator of the vehicle.

In her third issue on appeal, the Defendant argues that this court erred in convicting her of Knowing and Intentional Possession of crack cocaine because the Commonwealth failed to demonstrate the Defendant knowingly and intentionally possessed the packets of crack cocaine found in the car. This court disagrees.

Intentional Possession of a Controlled Substance is statutorily defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

> * * *
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 Pa.C.S. § 780–113(a)(16).

To find a defendant guilty of knowingly and intentionally possessing narcotics, there must be proof that he or she had knowledge of the existence and location of the narcotics. *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981) citing *Commonwealth v. Griffin*, 326 A.2d 554 (Pa. Super. 1974). The requisite knowledge and intent may be inferred from an examination of the totality of the circumstances surrounding the case. *Id.* citing *Commonwealth v. Cash*, 367 A.2d 726 (Pa. Super. 1976); *Commonwealth v. Hannan*, 331 A.2d 503, 540 (Pa. Super 1974). Location of the contraband in an area usually accessible only to the defendant may lead to the inference that he placed it there or knew if others did so. *Id.* citing *Commonwealth v. Ferguson*, 331 A.2d 856 (Pa. Super. 1974); *Commonwealth v. Cash*, supra.

Here, the Defendant was found guilty of Intentional Possession of a Controlled Substance because of the Defendant's close proximity to the large amount of crack cocaine located in the vehicle she was driving when stopped by police. This court relied on several factors to find the Defendant guilty of knowing and intentional possession of the crack cocaine found in the false can of Mountain Dew located in the driver's seat cup holder and in the trunk of the car. First, the Defendant was near the narcotics found in the Mountain Dew can and in the trunk of the car. At the time Officer Dempsey came into contact with the Defendant, only the Defendant was in the vehicle and had accessibility, as the driver or operator, inferring her knowledge to the contents of the vehicle. (N.T. 10/7/15 p. 7). Moreover, the Mountain Dew can was well within the Defendant's reach in the driver's seat cup holder. (N.T. 10/7/15 p. 9).

Second, Officer Dempsey's testimony revealed that narcotics hidden inside of soda cans are a common tactic employed by users and sellers. (N.T. 10/7/15 p. 15). Out of the fifteen (15) false cans he has found in his experience, fourteen (14) cans contained narcotics and only one false can was empty. (N.T. 10/7/15 p. 16). Lastly, there were eighty-four (84) zip tie baggies of

16

crack cocaine in plain view in the trunk of the car, when the Defendant was stopped. (N.T. 10/7/15 pp. 7, 11).

Third, this court relied on the credible expert testimony of Officer Trappler. He noted that the total sum of narcotics recovered from the vehicle, one hundred and sixty (160) packets of crack cocaine, was a large amount. (N.T. 10/7/15 p. 52). Further, Officer Trappler testified that because seventy-six (76) packets of cocaine were recovered from the front of the vehicle and eighty-four (84) packets from the back, it is indicative of a person who is attempting to reduce the severity of their guilty conduct by separating the product; users and sellers oftentimes believe that if the drugs are not near them, they will not be found guilty. (N.T. 10/7/15 pp. 53-54). Moreover, the Defendant showed a consciousness of guilt when she provided a false name and other identifying information when stopped by Officer Dempsey.

Therefore, under the totality of the circumstances, in reviewing evidence that the Defendant provided false identifying information to Officer Dempsey, was the sole person in the vehicle, in control of the vehicle as the driver, in close proximity to the large sum of crack cocaine located in the false soda can and in the trunk of the vehicle coupled with Officer Trappler's expert testimony, this court properly found that the Defendant knowingly and intentionally possessed the packets of crack cocaine found in the car.

## VI.  CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: June 15th, 2016